Jose A. Nova CARMONA; Deisy Nova; Heisy Nova Petitioners,

v.

Alberto R. GONZALES,* Attorney General Respondent.

No. 03–70703.

Agency Nos. A74–428–511, A74–428–512, A74–428–513.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 3, 2004.

Decided Oct. 20, 2005.

* Alberto R. Gonzales is substituted for his predecessor, John Ashcroft, as Attorney General of the United States, pursuant to Fed. R.App. P. 43(E) (2).

Stephen W. Manning, Immigrant Law Group LLP, Portland, OR, for Petitioners.

Jennifer Rotman, Immigrant Law Group LLP, Portland, OR, for Petitioners and Respondent.

Regional Counsel, Western Region Immigration & Naturalization Service, Laguna Niguel, CA, Ronald E. Lefevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, M. Jocelyn Wright, Anthony C. Payne, Jennifer L. Lightbody, Isaac R. Campbell, DOJ—U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before TROTT and KLEINFELD, Circuit Judges, and POLLAK,** Senior District Judge.

MEMORANDUM***

POLLAK, Senior District Judge:

The three petitioners in this case—Jose A. Nova Carmona ("Mr. Nova") and his

---

** The Honorable Louis H. Pollak, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Circuit Rule 36–3.

twin daughters, Deisy Nova Gomez ("Deisy") and Heisy Nova Gomez ("Heisy")—seek review of the Board of Immigration Appeals's ("BIA") denial of their petitions for suspension of deportation. This case revolves around events which occurred during the seven-year period immediately preceding petitioners' receipt of orders to show cause as to why they should not be deported. They now challenge the Immigration Judge's ("IJ") findings that (1) Mr. Nova lacked the "good moral character" statutorily required to be eligible for suspension of deportation, and that (2) Deisy and Heisy lacked the seven years of continuous physical presence in the United States statutorily required for such eligibility.

## I. BACKGROUND

Mr. Nova Carmona, Deisy, and Heisy are Mexican nationals who, together with the twins' mother, entered the United States without inspection in August 1987. At the time of this unpermitted entry, the twins were not quite two years old. The twins and their mother lived in California until 1994; Mr. Nova at times lived with them, but spent much of this period working elsewhere in California and Oregon in the seasonal agricultural industry and visiting his family whenever possible.

In April 1994, when Deisy and Heisy were eight, their mother took the children, against their wishes, back to Mexico. Soon thereafter, Deisy's and Heisy's mother handed her daughters over to her mother-in-law and then left for parts unknown. Hearing from his children that they wanted to return to the only home they knew,

Mr. Nova arranged with his sister, in Mexico, to have her bring his daughters back to the United States when she herself came. The twins' unlawful reentry—in conjunction with the unlawful entry of their aunt, Mr. Nova's sister—took place in August or September of 1994, four or five months after the twins had been taken to Mexico by their mother. Deisy and Heisy have lived with Mr. Nova ever since.

On June 19, 1996, the Immigration and Naturalization Service[1] ("INS") initiated deportation proceedings by serving Mr. Nova and his two daughters (who were by then ten years old) with orders to show cause as to why they should not be deported. The petitioners conceded illegally entry to the United States and petitioned the INS for suspensions of deportation.

Three years later, in July 1999, the IJ ruled that all three were ineligible for suspensions of deportation and ordered them deported.[2] Mr. Nova was found by the IJ to have participated in "smuggling" his daughters back into the United States from Mexico in 1994; this unlawful conduct, the IJ ruled, foreclosed any showing that Mr. Nova possessed the good moral character required for suspension of deportation. As for Deisy and Heisy, their 1994 June–to–August–or–September Mexican hiatus was held by the IJ to preclude a finding of eligibility for suspension of deportation. By virtue of the "stop time" rules—so the IJ appears to have concluded—the twins' unsought and unhappy stay in Mexico and "smuggled" reentry barred a showing that, in the period leading up to the 1996 show cause order initiating depor-

---

1. This opinion refers throughout to the INS. Effective March 1, 2003, the INS was abolished and its functions transferred to bureaus within the Department of Homeland Security, pursuant to the Homeland Security Act of 2002, Pub.L. No. 107–296, 116 Stat. 2135 (Nov. 25, 2002). The immigration enforce-

ment functions were transferred to the Bureau of Immigration and Customs Enforcement.

2. The IJ granted the petitioners time to voluntarily depart the United States.

tation proceedings, Deisy and Heisy had the seven years of "physical presence" necessary for suspension of deportation.

Because the BIA summarily affirmed the IJ, it is the opinion of the latter that is before this court for review. *See* 8 C.F.R. § 1003.1(e)(4)(ii); *Fajardo v. INS*, 300 F.3d 1018, 1019 n. 1 (9th Cir.2002).

## II. JURISDICTION AND STANDARD OF REVIEW

■ Because the deportation proceedings in this case began before April 1, 1997, and the final deportation order issued after October 30, 1996, this court's review is governed by the transitional rules for judicial review set forth in section 309 of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. 104–208, 110 Stat. 3009–546 (Sept. 30, 1996), which modify the jurisdictional rules of former section 106(a) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1105a(a) (1996) (repealed).

Under IIRIRA's transitional rules, no appeal is available from any discretionary decision made under former section 244 of the INA, which provides the standard for suspension of deportation applicable here. *See* 8 U.S.C. § 1254 (1996) (repealed). Certain requirements under section 244 are not discretionary, and may be reviewed. *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997) (finding jurisdiction to review the BIA's decisions regarding nondiscretionary decisions in suspension of deportation proceedings).

■ We have jurisdiction to review this case because the petitioners challenge the IJ's non-discretionary determinations that petitioners are, *per se*, precluded from

statutory eligibility for suspension of deportation. *See Kalaw*, 133 F.3d at 1150–51. We review the IJ's non-discretionary findings for substantial evidence. *See id.* at 1151. That is, we may reverse the IJ's determinations of these matters only if a reasonable fact-finder would have been compelled to reach a contrary conclusion on the record presented. *INS v. Elias–Zacarias*, 502 U.S. 478, 481 & n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Questions of law, however—whether the IJ applied the proper legal standard in making his findings—are reviewed *de novo*. *See Arteaga v. INS*, 836 F.2d 1227, 1228 (9th Cir.1988).

## III. DISCUSSION

To be eligible for suspension of deportation under section 244 of the INA, an alien must prove (1) continuous physical presence in the United States for seven years preceding application for suspension; (2) good moral character during that period; and (3) extreme hardship if deported. *See* 8 U.S.C. § 1254(a)(1) (1996) (repealed).

The IJ found that Deisy and Heisy were of good moral character, and that Mr. Nova had satisfied the physical presence requirement. The IJ also found that all three petitioners would suffer extreme hardship if deported.

### A. Mr. Nova's Moral Character

The IJ concluded, however, that Mr. Nova lacked good moral character because he admitted to knowingly encouraging the illegal re-entry of his daughters between April and September 1994. The IJ reasoned that this conduct constituted alien smuggling,[3] and those who are convicted of or admit to committing certain offenses

---

**3.** "Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or try to enter the United States in violation of the law" is deemed an alien smuggler. 8 U.S.C. § 1182(a)(6)(E)(I) (1996).

described in 8 U.S.C. § 1182(a)—including alien smuggling—are *per se* regarded as lacking "good moral character." 8 U.S.C. § 1101(f)(3) (1996).

■ The record supports the IJ's finding that Mr. Nova actively engaged in "smuggling" his daughters back into the United States, to rejoin him, in August or September of 1994. However, the recent decision in *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir.2005), establishes that "smuggling" one's own children does not trigger the *per se* moral character bar that the IJ—properly, under pre-*Moran* law—applied to Mr. Nova. Under *Moran*, Mr. Nova's role in his daughters' return to the United States does not render him automatically ineligible for suspension of deportation.

The IJ did not make a finding (and, so far as the record before us discloses, was not asked to make a finding) that Mr. Nova also "smuggled" his sister, the adult who accompanied his daughters on their return to this country. If Mr. Nova did "smuggle" his sister, *Moran* would not protect him from a determination that he lacked "good moral character." However, at Mr. Nova's hearing before the IJ, no one asked what role, if any, Mr. Nova played in his sister's illegal entry. The record shows that Mr. Nova's sister is an undocumented alien, that she entered this country with Mr. Nova's daughters in 1994, and that she brought the daughters

because Mr. Nova wished to be reunited with them. But this does not establish that Mr. Nova smuggled her; the record does not show whether Mr. Nova aided or influenced his sister's entry in any way. If she planned to come anyway, on her own initiative, and Mr. Nova only influenced her choice to bring the twins along, it would seem that Mr. Nova did not "smuggle" anyone but his daughters.

Insofar as the record made before the IJ touches on the interaction between Mr. Nova and his sister, it does not foreclose a finding that Mr. Nova was instrumental in bringing about his sister's illegal entry—i.e., that he smuggled both her and his daughters. But the record does not compel such a finding—indeed, the record is consistent with a finding that the sister's illegal entry was a decision taken independently of her brother, and that all he asked of her was to bring his daughters along on her own planned journey.[4]

■ In sum, the IJ did not consider, and the record does not show, whether Mr. Nova "smuggled" his sister into the United States. Indeed, what little material can be gleaned from the record on this point does not compel a conclusion one way or the other. Because the record at this time reveals an unresolved, dispositive factual question—whether Mr. Nova performed acts that constituted "smuggling," which forecloses a finding of his having good

---

4. In an exchange between Mr. Nova and the IJ, Mr. Nova stated that, when his daughters told him they wished to return to him, "I did tell [my sister] that *when she came up* to bring them up." (emphasis added). This statement may reasonably be read to signify that Mr. Nova's sister had already decided to come on her own account, not at her brother's instance. Mr. Nova's reply when the IJ asked "if you told her to bring [the girls], why did it take her three months to do it?" was as follows: "Well, more than anything, she had her things to do, my sister. I don't know, and she

came up on that date. I don't know. I feel that perhaps it was the most appropriate day for her. I don't know what else to say." This answer is compatible with a finding that Mr. Nova's sister had her own reasons for her illegal entry, and made her own decisions in every respect, except for her choice to bring her nieces along. Finally, it is to be noted that Mr. Nova testified that the money he admittedly sent to his sister was intended for his daughters' benefit; the record does not suggest that the money advanced by Mr. Nova in any way facilitated his sister's illegal entry.

moral character—we conclude that the proper course is to remand Mr. Nova's phase of this case for additional administrative proceedings. *See INS v. Orlando Ventura,* 537 U.S. 12, 16–17, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) ("Generally speaking, a court of appeals should remand a case to an agency for decision of a matter that statutes place primarily in agency hands. This principle has obvious importance in the immigration context.").

## B. Deisy's and Heisy's Physical Presence

■ We also find that the IJ's denial of suspension of deportation for Deisy and Heisy should be remanded. The IJ found that Deisy and Heisy met the character and hardship requirements for suspension of deportation, but could not establish the requisite seven years of continuous physical presence. It is the case that in 1994 the eight-year-old twins were absent from the United States for four or five months. But in the petition for review it is argued on the twins' behalf that the IJ ruled against Deisy and Heisy not because of their unsought absence in Mexico but because their reentry was unlawful—i.e., that the IJ counted Mr. Nova's "smuggling" not only against him but against his daughters as well.

We find that this argument merits consideration. Although at least twice in his oral opinion the IJ said he would not impute Mr. Nova's conduct to Deisy and Heisy,[5] the IJ also assessed the implications of the testimony bearing on whether Mr. Nova had some active involvement in his daughters' unlawful reentry, and opined that had the twins' *mother,* and not their father, been complicit in bringing the

two eight-year-olds back to the United States, "it would even be said that their physical presence ... did not really change." He explained:

If the testimony were that they had gone to Mexico with their mother and they returned with their mother and she brought them back to give them back to the lead respondent [Mr. Nova] and he did not participate in that, and the girls were in essence not really smuggled other than by their own mother who was reuniting them, then it would even be said that their physical presence, tracking that of both parents, did not really change since their own making of illegal entries is not something that would accrue other than what accrues to the parent, and it would not have been necessarily Mr. Nova's volition, but he did not stop them from going, knowing that they could not return easily. And then when according to the daughters' own desires apparently, and here the testimony does become fuzzy, I have to find that he did seek their return....

Subsequently, when the IJ determined that Mr. Nova was, in conjunction with his sister, responsible for his children's unlawful reentry, the resultant conclusion that "he does not possess good moral character" and hence "is not eligible for suspension of deportation" led the IJ to the further "somewhat distressing" conclusion that Mr. Nova's misconduct was the catalyst of an interruption of the twins' physical presence that rendered them ineligible for suspension of deportation. The IJ's explanation was as follows:

This decision is somewhat distressing to the Court because I also believe that consistent with that, having their father

---

5. At one point in his oral opinion the IJ stated that Deisy and Heisy "bear no moral responsibility" for their father's complicity in effectuating their unlawful entry, and at another point in his opinion the IJ, having found that Mr. Nova "does not possess good moral character," said that he would "not ascribe character" to the daughters.

arrange to have them brought back illegally after their mother had taken them, and this is an arrangement still, that this interrupts the girls' physical presence and I will not ascribe character to them. But for the reasons of the interruption of their presence, I find that they do not possess seven years physical presence based on the stop time rules.

The most that can reasonably be said in support of the IJ's determination that Deisy and Heisy were not eligible for suspensions of deportation is that the opinion is opaque. We remand to the IJ so that he may clarify his decision.

### IV. CONCLUSION

To determine whether there are sound bases, in fact and in law, for denying suspensions of deportation for Mr. Nova, and for Deisy and Heisy, and for ordering their removal, the decision of the BIA affirming the decision of the IJ is VACATED and the case REMANDED to the BIA for such clarifying proceedings as it may direct.