**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIO SANCHEZ,

　　　　　　　　　　*Petitioner,*

　　　　　　v.

MICHAEL B. MUKASEY, Attorney
General,

　　　　　　　　　　*Respondent.*

No. 04-75584

Agency No.
A77-832-827

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
January 14, 2008—San Francisco, California

Filed April 2, 2008

Before: J. Clifford Wallace, Procter Hug, Jr., and
Mary M. Schroeder, Circuit Judges.

Opinion by Judge Schroeder;
Judge Wallace Writing Separately

## COUNSEL

Frank Sprouls, San Francisco, California, for the petitioner.

Erica B. Miles, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

SCHROEDER, Circuit Judge:

Mario Sanchez, a native and citizen of Mexico, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for cancellation of removal. The BIA denied the application on the ground that Sanchez lacked the good moral character required

by 8 U.S.C. § 1229b(b)(1)(B), because he had smuggled his alien wife into the country. Citing to *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir. 2005), Sanchez asks this court to remand to the BIA, claiming he is eligible for the "family unity" waiver contained in 8 U.S.C. § 1182(a)(6)(E)(iii). This is the first published opinion of this court after *Moran* to consider whether the family unity waiver is available to an alien denied cancellation because he smuggled his spouse, parent, or child into this country.

In *Moran*, we concluded that an applicant for cancellation of removal is eligible to be considered for a discretionary "family unity" waiver of the alien-smuggling bar when the smuggled alien was the applicant's spouse, parent, son or daughter. 395 F.3d at 1094-95. We denied the petitioner relief in that case because when the petitioner smuggled the alien, she was not yet his wife. *Id.* We reasoned that the waiver would have applied if they had been married at the time of the entry.

The government's principle contention in this case is that *Moran*'s discussion of the applicability of the family unity waiver to cancellation is dictum that we are free to ignore. We do not accept that contention. We hold that *Moran*'s reasoning is controlling in this case. We therefore remand to the BIA.

**[1]** The complicated framework of the cancellation of removal statute, 8 U.S.C. § 1229b(b), is important to our analysis. The relevant subsection governing cancellation provides:

> The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien—
>
> > (A) has been physically present in the United States for a continuous period of not

less than 10 years immediately preceding the date of such application;

(B) *has been a person of good moral character during such period*;

(C) has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title, subject to paragraph (5); and

(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1) (emphasis added). As the language makes clear, the Attorney General may not cancel removal under § 1229b(b)(1) unless the alien establishes "good moral character."

Section 1229b(b) itself does not contain any definition of good moral character. We therefore look to the general definitions section of the Immigration and Nationality Act, 8 U.S.C. § 1101, and specifically to § 1101(f)(3). This subsection defines the term by pointing us to the admissibility provisions of section 1182: a person who is a member of the class of persons described in I.N.A. § 212(a)(6)(E), 8 U.S.C. § 1182(a)(6)(E) cannot be found to have good moral character, regardless of admissibility or inadmissibility. Subsection 1101(f)(3) states:

[n]o person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was . . . a member of one or

more of the classes of persons, whether inadmissible or not, described in paragraph[ ] . . . (6)(E) . . . of section 1182(a) of this title . . . .

**[2]** The general definition of good moral character thus incorporates provisions that on their face govern admissibility, because § 1182(a)(6)(E) is located in that portion of the statute. Section 1182 governs whether an alien is admissible to the United States, or whether an alien may adjust status to that of permanent resident. In order to determine whether an alien is of good moral character for cancellation of removal, we must determine whether the alien has engaged in conduct that would render the alien inadmissible under § 1182.

**[3]** Alien smuggling constitutes such conduct. Section 1182(a)(6)(E)(i) renders alien smugglers inadmissible. It provides that "[a]ny alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible." Accordingly, because a smuggler is a "member of the [inadmissible] classes of persons" described in § 1182(a)(6)(E)(i), a smuggler cannot be found to have good moral character for purposes of an application for cancellation of removal. *See* 8 U.S.C. §§ 1101(f)(3); 1229b(b)(1).

**[4]** The particular provision of § 1182 in dispute here, however, the "family unity" waiver, establishes a limited and discretionary waiver of inadmissibility for a smuggler when the smuggled alien was a close family member.

Section 1182(d)(11) provides:

The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) . . . in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad

voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a returning resident under section 1181(b) of this title . . . and in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title . . . (other than paragraph (4) thereof), if the alien has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

**[5]** In *Moran* we considered this provision for the first time in the context of cancellation of removal. 395 F.3d at 1093. The petitioner sought review of an order of removal on grounds of alien smuggling. *Id.* at 1090. The alien had smuggled his future wife into the country. *Id. Moran* considered the applicability of the waiver and held it did not apply in that case. *Id.* at 1094 Its analysis is critical to our own.

**[6]** *Moran* recognized that, on its face, the waiver of inadmissibility in (d)(11) applies to admissibility or eligibility for adjustment of status, not to relief from cancellation. *See id.* at 1093. The *Moran* opinion noted, however, that the relevant definition of good moral character for cancellation purposes is found in a provision relating to inadmissibility. *See id.* at 1093. To apply the good moral character provision required some adaptation of the language, including the disqualification for alien smuggling, so that it would apply in the context of an application for cancellation of removal. In the words of the opinion, it was necessary to "translat[e] the alien-smuggling inadmissibility provision and its exceptions into the language of cancellation of removal." *Id.*

In *Moran*, we relied upon *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004), where we considered a provision that on its face rendered an alien inadmissible. We

held that it also rendered an alien ineligible for cancellation. 389 F.3d at 1093. *Moran* cited *Gonzalez-Gonzalez* for the proposition that cancellation of removal must be read to "cross reference the relevant concepts in other statutes." *Id.* (internal alterations and quotation marks omitted).

In *Gonzalez-Gonzalez*, we held that the petitioner, who had entered without being admitted and was later convicted of the crime of domestic violence, was ineligible for cancellation of removal. 390 F.3d at 650. Our opinion explained that the section governing cancellation, *see* 8 U.S.C. § 1229b(b)(1)(C), renders aliens ineligible if they have been convicted of an offense listed in either I.N.A. § 212(a)(2), 8 U.S.C. § 1182(a)(2), a provision governing inadmissibility, or I.N.A. § 237(a)(2)-(3), 8 U.S.C. § 1227(a)(2)-(3), provisions governing removability. *Id.* Domestic violence is listed as an offense under the removal provisions, *see* § 1227(a)(2)(E)(i), but not the inadmissibility provision. *Id.* at 652. The removal provisions state that they only apply to aliens "admitted to the United States." § 1227(a). Because the petitioner was never admitted to the United States, and his offense was only found in the removal provisions, he argued that it posed no bar to his application for cancellation of removal.

We rejected that argument. *Gonzalez-Gonzalez*, 390 F.3d at 652. We explained that the "language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole." *Id.* Petitioner's status as an alien present without admission was irrelevant. *See id.* at 653. Because the petitioner was convicted of an offense included in the grounds for removal, he was ineligible for cancellation, regardless of whether he had ever been lawfully admitted. We denied relief from removal. *Id.*

*Moran* relied upon that reasoning to reach a conclusion that would make some aliens eligible to obtain relief from removal because they would have been eligible for a waiver of inadmissibility. *Moran* was decided after the BIA decision in this

case. Petitioner Sanchez therefore asks that we remand for the BIA to consider his eligibility for a waiver under *Moran*.

The government argues that the *Moran* panel wrongly concluded that the family unity waiver is available to aliens seeking cancellation. According to the government, the general definition of good moral character in § 1101(f) directs us to look only to the conduct described in the inadmissibility provisions of § 1182 to determine whether a person is of good moral character. If the conduct would render an alien inadmissible, then the alien lacks the requisite good moral character for cancellation. The waiver provision is thus not relevant.

The government further points out that nothing in § 1101(f) indicates that the inadmissibility waiver should apply in the cancellation context. Nor does anything in the statute suggest we should incorporate the waiver, since by its own terms, it does not prevent the petitioner from being a member of the class of persons described in § 1182(a)(6)(E). The waiver provision itself only applies to a permanent resident who traveled abroad, or an alien seeking to adjust status under 8 U.S.C. § 1153(a) (providing for immigrant visas for relatives of U.S. citizens). This petitioner is in neither of those categories, so the government concludes that the waiver does not apply to him.

**[7]** The reasoning of *Moran*, however, is contrary to this logic. Under *Moran*, all of the provisions of § 1182(a)(6)(E) pertaining to admissibility, including the family unity waiver, must be read into the provisions governing eligibility for cancellation. The government's position cannot be squared with the reasoning of *Moran*.

The government did not petition for rehearing in *Moran*, even though it disagreed with its reasoning, because the government prevailed in the result. Numerous memorandum dispositions of this court have followed *Moran*, and we have not yet received a government petition for rehearing en banc. *See*

*Carrillo-Estrada v. Mukasey*, No. 02-72230, 2007 U.S. App. LEXIS 27158 (9th Cir. 2007); *Rodriguez-Reyes v. Keisler*, No. 05-76610, 2007 U.S. App. LEXIS 23183 (9th Cir. 2007); *Godinez-Tejeda v. Keisler*, No. 05-72934, 2007 U.S. App. LEXIS 23554 (9th Cir. 2007); *Paz Guzman v. Gonzales*, No. 05-72638, 2007 U.S. App. LEXIS 1241 (9th Cir. 2007); *Mendoza-Calvillo v. Gonzales*, No. 04-75533, 2006 U.S. App. LEXIS 19710 (9th Cir. 2006); *Villalobos v. Gonzales*, No. 04-76532, 2006 U.S. App. LEXIS 9136 (9th Cir. 2006); *Velazquez v. Gonzales*, No. 04-72436, 2006 U.S. App. LEXIS 12359 (9th Cir. 2006); *Garcia-Olivares v. Gonzales*, No. 04-75743, 2006 U.S. App. LEXIS 4186 (9th Cir. 2006); *Pinedo v. Gonzales*, No. 04-74099, 2006 U.S. App. LEXIS 4223 (9th Cir. 2006); *Carmona v. Gonzales*, No. 03-70703, 2005 U.S. App. LEXIS 22966 (9th Cir. 2005). None of these dispositions, however, are precedential. *See* 9th Cir. R. 36-3(a). We have also found at least one memorandum disposition, also non-precedential, that treated *Moran*'s analysis as dictum. *Sanchez v. Gonzales*, No. 04-70271, 2006 U.S. App. LEXIS 19221, *2 (9th Cir. 2006).

**[8]** We therefore turn to the government's contention before us that the relevant analysis in *Moran* is dictum and not binding, and that this panel is free to evaluate the merits of the government's position that *Moran*'s statutory analysis is incorrect. While we have used a number of verbal formulations to describe "dictum," we treat reasoning central to a panel's decision as binding later panels. *See Smith v. Patrick*, 508 F.3d 1256, 1260 (9th Cir. 2007) (holding that reasoning that constituted "the sole means by which the result was reached . . . was not dictum"); *United States v. Ingham*, 486 F.3d 1068, 1079 n.8 (9th Cir. 2007) (concluding that "careful . . . treatment of the subject . . . [,] not 'made casually [and with] consideration of the alternatives' " was not dictum (quoting *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring)); *see also Johnson*, 256 F.3d at 920 (Tashima, J., concurring) (concluding that dicta are "statements 'not necessary to the decision' of the

case" (quoting *Export Group v. Reef Indus.*, 54 F.3d 1466, 1472 (9th Cir. 1995)). Under our circuit's law, when a panel selects a single line of reasoning to support its result, the reasoning cannot be ignored as dictum.

**[9]** Under this standard, *Moran*'s conclusion that the family unity waiver is available to aliens seeking cancellation of removal is not dictum. The availability of the waiver was the central issue considered by the panel. In a three-page discussion, the panel noted that it was deciding an issue of first impression, distinguished contrary authority, translated the plain language of the family unity waiver into a standard applicable to the cancellation context, and applied that standard to the petitioner's case. *See Moran*, 395 F.3d at 1092-95. We are bound to follow and apply the law as stated by *Moran*.

The government in this case is essentially contending that there was another way for the *Moran* panel to reach the same conclusion of ineligibility for the waiver, i.e., by adopting the government's statutory analysis. This is not a useful standard. If adopted, it would render virtually any statement of appellate court reasoning non-precedential, because there is almost always more than one way to get to a given result. We are therefore bound by *Moran*'s core reasoning.

We are aware that the result in *Moran* is in tension with the decision of this court in *Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000), where we held that the waiver provision did not apply to an application for voluntary departure. In *Moran*, we distinguished *Khourassany* on the ground it was not decided in the context of cancellation. 395 F.3d at 1093. The government here argues that distinction is immaterial, yet the *Moran* panel concluded the distinction was material, and we are bound by that conclusion as well. The government has not cited *Khourassany* to us and does not rely on its holding as supporting its position in this case.

**[10]** For the foregoing reasons, we conclude that this case is controlled by the panel's conclusion in *Moran* that the

waiver provision of 8 U.S.C. § 1182(a)(6)(E)(iii) applies to applications for cancellation of removal. Because Sanchez appears to be eligible for the family unity waiver, we **REMAND** to the BIA for its consideration in this case.

The Petition for Review is **GRANTED**.

---

WALLACE, Circuit Judge, writing separately:

I have some doubt whether *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir. 2005), is binding on the case before us and compels us to grant the petition for review. Of particular concern is that the parties in *Moran* did not raise or brief the issue of whether the family unity waiver in the section 1182 admissibility provisions applies in the cancellation of removal context. This was a panel venture. The issue was not therefore "refined by the fires of adversary presentation," *see United States v. Crawley*, 837 F.2d 291, 293 (7th Cir. 1988), which may explain why the *Moran* panel ultimately proffered an interpretation so at odds with the text and structure of the relevant statutory scheme.

That we are required to follow this interpretation, which was unnecessary to the resolution of the case, is at least questionable. The ultimate holding in *Moran* was simply that the petitioner did not qualify for the waiver because he was not married to his wife at the time he paid smugglers to bring her illegally to the United States from Mexico. *See Moran*, 395 F.3d at 1090. Revising the language of the statute to apply to cancellation of removal was superfluous because that revision did not affect the language of the waiver requiring that the smuggler has smuggled a "spouse, parent, son, or daughter (and no other individual)" in order to qualify for the waiver. *See* 8 U.S.C. § 1182(d)(11). Regardless of whether the waiver applied to an application for cancellation of removal, the petitioner would not have qualified. Furthermore, the statement in

*Moran* that "Moran *would* be eligible for the waiver . . . *if* the only individuals he had helped smuggle into the country were his son and his spouse," 395 F.3d at 1094, is clearly dicta. *See Wainwright v. Witt*, 469 U.S. 412, 422 (1985) (holding that where a court was only required to decide when prospective jurors could *not* be excluded, it was unnecessary for the court to decide when jurors *could* be excluded). But the majority makes a good argument under Ninth Circuit law why *Moran* is binding on us, so I will write separately to express my belief that the *Moran* "reasoning," which the majority concludes it is required to follow, was wrongly decided and should be reconsidered by this court sitting en banc.

As the majority expressed in its explanation of the applicable statutory framework, section 1229b(b)(1) of the Immigration and Nationality Act provides that to be eligible for cancellation of removal, a person must be of good moral character, but does not provide a definition of good moral character. The general definitions section of the Act directs us to several specific admissibility provisions in section 1182, including section 1182(a)(6)(E), for a definition of good moral character. *See* 8 U.S.C. § 1101(f)(3). Section 1182(a)(6)(E)(i) in turn indicates that alien smugglers are inadmissible. Thus, by way of extrapolation, a smuggler inadmissible according to section 1182 also lacks good moral character for cancellation of removal under section 1229.

However, another provision of section 1182 establishes a limited and discretionary waiver of inadmissibility for a smuggler when the smuggled alien was a close family member. *See* 8 U.S.C. §§ 1182(a)(6)(E)(iii), (d)(11). *Moran* held that the waiver applied in the cancellation of removal context and that, if an alien smuggler had smuggled in a close family member, he did not lack good moral character and was eligible for cancellation of removal. I believe this conclusion was erroneous.

First, *Moran* disregards the plain meaning of the relevant statutes. *See Gomez-Lopez v. Ashcroft*, 393 F.3d 882, 885 (9th

Cir. 2005) ("In attempting to determine the meaning of a statute, 'we look first to the plain meaning . . . and give effect to that meaning where fairly possible' "). The plain language of the waiver applies only to "any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a returning resident" and to "an alien seeking admission or adjustment of status as an immediate relative or immigrant . . . ." 8 U.S.C. § 1182(d)(11). That language explicitly limits the application of the waiver to *lawful permanent residents*, *see* 8 U.S.C. § 1101(a)(20), and to the spouses and children of citizens or the spouses and unmarried children of *lawful permanent residents*, *see* 8 U.S.C. § 1153(a).

Thus, the waiver does not apply to all aliens found inadmissible under section 1182(a)(6)(E). For example, according to the plain language of the waiver provision, though the waiver would apply to a *permanent* resident, it does not apply to a *temporary* resident alien who briefly travels abroad, attempts to re-enter the United States, and is denied admission because he is found to have smuggled a close family member into the United States. The waiver would also not apply to a married son or daughter of a lawful permanent resident seeking admission or adjustment of status. *See* 8 U.S.C. § 1153(a)(2). These examples illustrate that the waiver is not a general waiver of section 1182(a)(6)(E). It enumerates only certain categories of inadmissible aliens. Other categories of aliens inadmissible under section 1182(a)(6)(E) are not entitled to the waiver.

As the waiver does not apply to all inadmissible aliens, it is an even greater stretch to apply the waiver in the context of cancellation of removal, for which it plainly was not contemplated. This leads to the second major flaw in *Moran*'s statutory interpretation: its application of section 1182(d)(11) (which relates to the status of inadmissibility) to section 1229b(b)(1) (which relates to the discretionary determination of good moral character) is inconsistent with the relevant stat-

utory scheme. In fact, the waiver provision has nothing at all to do with good moral character, because good moral character is irrelevant to inadmissibility. Inadmissibility is simply based on membership in the categories enumerated in section 1182; pursuant to that section, aliens may be inadmissible for a variety of reasons, some of which are completely unrelated to good moral character. For example, section 1182(a)(1) denies admissibility on the basis of health concerns. Even the alien smuggling provision in section 1182(a)(6)(E) is not discussed in terms of moral character; alien smugglers are simply a category of aliens who are inadmissible because section 1182 deems them so. Section 1182(d)(11) waives the inadmissibility of alien smugglers, but it does not indicate that smugglers who have smuggled immediate family have good moral character.

Because section 1182(d)(11) speaks only to inadmissibility, extrapolating it to apply to a section 1229b(b)(1) finding of good moral character as *Moran* suggests requires some sort of justification in section 1229 or section 1101. There is none. Section 1101 clearly identifies the subsections of 1182 that apply to the definition of good moral character, and it does not reference subsection 1182(d)(11) or any other waiver.

To the contrary, the language of section 1101 supports the distinction between inadmissibility and good moral character, stating that its provisions apply to classes of persons described in the relevant statutes "whether inadmissible or not." 8 U.S.C. § 1101(f)(3). Thus, consistent with section 1101, an alien who smuggled close family could be admissible under section 1182 because his inadmissibility is waived, but still lack the requisite good moral character under section 1101 for cancellation of removal purposes. In sum, it appears that the good moral character requirement simply cannot be "waived."

Third, *Moran* relies in vain on *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649 (9th Cir. 2004). Our holding in *Gonzalez-*

*Gonzalez* does not support *Moran*'s rewriting of section
(d)(11) to replace the language of "admissibility, applications
for admission, and adjustment of status with references to
cancellation of removal." *Moran*, 395 F.3d at 1093. As the
majority described, in *Gonzalez-Gonzalez* we analyzed the
language of 8 U.S.C. § 1229b(b)(1)(C). That section states
that, to be eligible for cancellation of removal, the alien must
show that he "has not been convicted of an offense under sec-
tion 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title . . . ."
8 U.S.C. § 1229b(b)(1)(C). Section 1182, as discussed, is
titled "Inadmissible aliens" and section 1227 is titled "Deport-
able aliens." *See Gonzalez-Gonzalez*, 390 F.3d at 650.
Gonzalez-Gonzalez was an *inadmissible* alien who had been
convicted of a domestic violence offense. *Id.* Domestic vio-
lence, however, is not listed as an offense under the inadmis-
sible aliens section, 1182. It is only listed under 8 U.S.C.
§ 1227(a)(2), relating to *deportable* aliens. *See id.* Therefore,
Gonzalez-Gonzalez argued that, since he was an inadmissible
alien who was convicted of domestic violence, the offenses
listed under section 1227 did not apply to him as grounds for
ineligibility for cancellation. *Id.* at 652.

We disagreed, holding that "[t]he plain language of
§ 1229b indicates that it should be read to cross-reference a
list of offenses in three statutes, rather than the statutes as a
whole. The most logical reading of 'convicted of an offense
under' is that reached by the BIA: 'convicted of an offense
*described* under' each of the three sections." *Id.* We did not
rewrite the statute. We simply understood that the three sec-
tions specifically referenced in 8 U.S.C. § 1229(b)(1)(C) were
relevant because of the offenses listed therein, not because of
where they fit in the overall statutory structure. *See id.* We did
not say that the language of the admissibility and deportability
statutes should be translated into the language of cancellation
of removal at certain times. Our holding was far more limited
than that, stating only that because domestic violence was
listed under one of the three statutes in section 1229(b)(1)(C),
Gonzalez-Gonzalez was ineligible for cancellation. *See id.*

at 652-53. Thus, *Gonzalez-Gonzalez* simply cannot support Moran's whole-cloth rewriting of the statute.

Fourth, as the majority states, Maj. Op. at 3413, *Moran* conflicts with this court's holding in *Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000). In *Khourassany*, we held that the waiver provision did not apply to an application for voluntary departure. *Id.* Though *Moran* dealt with cancellation of removal and not voluntary departure, the good moral character requirement is identical. The majority argues that the *Moran* panel concluded the distinction was material and that we are bound by that statement. Maj. Op. at 3413-14. But *Moran* can hardly be said to have distinguished *Khourassany*; it simply ignored the contrary authority. The only reference *Moran* makes to the earlier case is the following:

> The application of this statutory scheme in the cancellation of removal context is an issue of first impression in the Ninth Circuit. *Cf. Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000) (applying the alien smuggling rule to the good moral character requirement in the context of a determination of eligibility for voluntary departure).

*Moran*, 395 F.3d at 1093. *Moran* did not even acknowledge that *Khourassany* was in conflict, and offered no justification for the contradictory set of rules it created.

Thus, *Moran* has now put us in the unreasonable situation in which an alien smuggler applying for voluntary departure cannot avail himself of the waiver, whereas an alien smuggler applying for cancellation of removal, using the same statutory scheme, can. That conflict should be addressed by the en banc court.

Finally, that Congress has expressed an interest in family unification does not mean that we can thwart Congress's language in an effort to promote our perception of Congress's

intent. Congress knows how to create exceptions to the smuggling bar for the benefit of family reunification, and has done so. *See* 8 U.S.C. §§ 1182(a)(6)(E)(ii), (d)(11). Here, Congress has clearly limited the application of the waiver. If Congress decides that a person who has smuggled immediate family members does not lack the good moral character required for cancellation of removal, it can so legislate. We cannot.