**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANALILIA ARENAS DE GARCIA and
GELASIO GARCIA,
                    *Petitioners,*

            v.

ERIC H. HOLDER Jr., Attorney
General,
                    *Respondent.*

No. 07-71182

Agency Nos.
A098-571-168
A098-571-169

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued October 7, 2009
Submitted September 1, 2010
Pasadena, California

Filed September 1, 2010

Before: Harry Pregerson, Stephen Reinhardt and
Kim McLane Wardlaw, Circuit Judges.

Opinion by Judge Reinhardt

13121

**COUNSEL**

Murray David Hilts; Michael Joseph Codner, San Diego, California, for petitioner Analilia Arenas de Garcia.

Murray David Hilts, San Diego, California, for petitioner Gelasio Garcia.

Gregory G. Katsas, Acting Assistant Attorney General, Civil Division; James A. Hurley, Attorney, Office of Immigration Litigation; Anh-Thu P. Mai-Windle, Senior Litigation Counsel, Office of Immigration Litigation; Mark Christopher Walters, Assistant Director, Office of Immigration Litigation; Katherine Clark, Trial Attorney, Office of Immigration Litigation, Washington, D.C., for the respondent.

**OPINION**

REINHARDT, Circuit Judge:

Analilia Arenas de Garcia and her husband, Gelasio Garcia ("the Garcias"), petition for review of a BIA decision denying their motion to reopen their removal proceedings. Some of the evidence that the Garcias submitted with their motion to reopen and with a subsequently filed "supplemental brief" in support of their motion, was cumulative of evidence that they had submitted during their hearing, and some was not. We hold that, pursuant to *Fernandez v. Gonzales*, 439 F.3d 592 (9th Cir. 2006), we have jurisdiction to review the BIA's decision to the extent that it pertains to the Garcias' non-cumulative evidence. *Id.* at 603. However, we lack jurisdiction to review that decision insofar as it pertains to the cumulative evidence, except to the extent that the Garcias raise a question of law regarding the BIA's treatment of that evidence. *See* 8 U.S.C. § 1252(a)(2)(D) (preserving jurisdiction over questions of law raised in petitions for review of removal orders).

Reaching the merits of the Garcias' claims, we deny the petition in part and grant it in part. We hold that the BIA did not abuse its discretion in concluding that the Garcias' daughter's new medical condition did not warrant reopening. However, the BIA erred by failing to exercise its discretion to consider or decline to consider the Garcias' supplemental brief and the attached exhibit relating to a new medical condition allegedly incurred by Analilia's mother. Accordingly, we remand for further proceedings.

## I.   Factual and Procedural Background

Analilia Arenas De Garcia and Gelasio Garcia are natives and citizens of Mexico. They entered the United States in August 1989 and have lived in this country for more than twenty years. They are each the children of lawful permanent resident mothers and are together the parents of two U.S. citizen daughters, Vanessa, born in 1990, and Mariela, born in 1992.

In December 2004, the Garcias contacted a Department of Homeland Security office and requested cancellation of removal. The Garcias were not at the time in removal proceedings. Immigration officials subsequently initiated removal proceedings against them by serving them with Notices to Appear, alleging that they were removable as aliens present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). At a hearing before an IJ, the Garcias conceded removability and sought cancellation of removal. *See* 8 U.S.C. § 1229b(b). To be eligible for cancellation, each had to show that, *inter alia*, his or her "removal would result in exceptional and extremely unusual hardship to [his or her] spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Id.*

At their hearing, Analilia and Gelasio testified that they are very close to their U.S. citizen daughters. They explained that

their family has never lived apart and that, if they were ordered removed, their daughters would go with them. They feared that their daughters, who have never been to Mexico apart from a single trip to Tijuana, would have trouble adjusting to life there. In particular, they were worried about the diminished educational opportunities that their daughters would face. In the United States, both girls were doing well in school and were on track to go to college. Analilia and Gelasio feared that the girls would have trouble succeeding academically in Mexico, because English was their best language, and neither could read or write in Spanish. Gelasio was also concerned about the family's economic prospects in Mexico. Here, both he and Analilia worked full time. With help from extended family, they were able to achieve a comfortable standard of living. In Mexico, Gelasio worked as a subsistence farmer, a job that would not allow him to provide well for his family.

Analilia and Gelasio also testified briefly about an eye condition afflicting Mariela, which had required her to undergo surgery about ten years earlier, and which necessitated trips to the doctor every six months to a year to replace her glasses. They further testified that Analilia cared for her lawful permanent resident mother, who lived with them, and who suffered from hypertension and high cholesterol. Finally, they testified that most of their extended family members, with whom they and their daughters were very close, lived in the United States.

On December 19, 2005, the IJ denied the Garcias' cancellation applications on the ground that they had failed to establish the requisite hardship to a qualifying relative. He acknowledged that Vanessa and Mariela would experience a lower standard of living and reduced educational opportunities in Mexico, but found that this hardship was not "exceptional and extremely unusual." He was also "not able to find the requisite degree of hardship" to the Garcias' lawful permanent mothers.

The Garcias appealed to the BIA; their initial brief to the BIA, submitted on June 12, 2006, focused primarily on the alleged educational and cultural hardships that their daughters would face in Mexico. On August 25, 2006, the BIA adopted and affirmed the IJ's decision. On November 16, 2006, the Garcias filed a timely motion to reopen. They asserted that Mariela had developed "a severe keloid involving [her] right external ear," which could not be safely treated in Mexico.[1] As evidence, they submitted two doctors' notes diagnosing Mariela and referring her to treatment and an investigative news report documenting the risks of plastic surgery in Mexico. On December 18, 2006, the Garcias filed a "motion to accept supplemental brief" along with a document titled "supplemental brief in support of motion to reopen." The supplemental brief asserted that Analilia's lawful permanent resident mother had "developed several new medical conditions" subsequent to the December 2005 hearing, namely, high cholesterol and a "pre-cancerous condition in her cervix." Attached to the supplemental brief were two doctor's reports purporting to document these conditions, one relating to high cholesterol and the other to the alleged cervical condition.[2] However, the high cholesterol condition was in fact cumulative of the high cholesterol condition testified to at the hearing.

On February 28, 2007, the BIA denied the Garcias' motion to reopen. It found that the evidence of Mariela's keloid condition was not "likely [to] change the outcome on the issue of whether the respondents have established exceptional and extremely unusual hardship." It said nothing about the Garcias' supplemental brief or evidence. The Garcias timely petitioned this court for review.

---

[1] A keloid is "a thick scar resulting from excessive growth of fibrous tissue." Merriam-Webster's Medical Dictionary (2007).

[2] The first doctor's report, which discussed Analilia's mother's cholesterol, may also contain evidence related to the condition of her cervix. If so, that would in no way change anything in our analysis.

## II.   Jurisdiction

The government asserts that 8 U.S.C. § 1252(a)(2)(B)(i) deprives us of jurisdiction to review the BIA's denial of the Garcia's motion to reopen.[3] That provision states:

> Notwithstanding any other provision of law . . . and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section . . . 1229b[, the cancellation of removal provision] . . . .

8 U.S.C. § 1252(a)(2)(B).

In *Fernandez v. Gonzalez*, 439 F.3d 592 (9th Cir. 2006), we addressed at length the question when a BIA decision on a motion to reopen constitutes a "judgment regarding the granting of relief under section . . . 1229b" which, pursuant to § 1252(a)(2)(B)(i), we lack jurisdiction to review. The facts and procedural posture of *Fernandez* are in some respects similar to the facts and procedural posture of this case. Like the Garcias, Fernandez applied for cancellation based on the diminished educational opportunities and difficult cultural adjustments that her U.S. citizen children would face if she were removed. *Fernandez,* 439 F.3d at 595. The IJ denied her application, and the BIA affirmed. *Id.* Fernandez then filed a

---

[3]The Supreme Court recently issued an opinion interpreting clause (ii) of § 1252(a)(2)(B). *See Kucana v. Holder*, 130 S.Ct. 827 (2010). The Court held that § 1252(a)(2)(B)(ii) does not, as a general matter, preclude jurisdiction over BIA decisions denying motions to reopen. In so holding, the Court explicitly declined to reach the question we face here: whether § 1252(a)(2)(B)(i) precludes "review of a reopening denial . . . [in cases in which the court] lack[s] jurisdiction over the alien's underlying claim for relief." *Id.* at 839 n.17.

motion to reopen. She sought to introduce evidence of her children's further immersion in U.S. culture during the four years between her hearing and the BIA's decision on appeal. *Id.* The BIA denied the motion on the ground that it failed to establish prima facie eligibility for cancellation. *Id.*

**[1]** We were required to decide in *Fernandez* whether the BIA's decision constituted a "judgment regarding the granting of relief under [the cancellation of removal provision] . . . ." 8 U.S.C. § 1252(a)(2)(B)(i). We concluded that it did, because Fernandez's motion had essentially asked the BIA to revisit its prior judgment regarding her eligibility for cancellation. *Id.* at 603. We reasoned that, if we held that we had jurisdiction to review the BIA's denial of a motion to reopen that presented "essentially the same discretionary issue originally decided [at the IJ hearing and on appeal to the BIA]," petitioners could "make an end-run around the bar to review of their direct appeals simply by filing a motion to reopen." *Id.* at 600, 601.

**[2]** In deciding *Fernandez*, however, we made a distinction that is key to the present case. We found it dispositive that Fernandez's motion sought to present evidence that was *cumulative* of that which she had presented during her hearing. In contrast, we stated that we would have had jurisdiction to review the BIA's decision if her motion had "address[ed] a hardship ground so distinct from that considered previously as to make the motion to reopen a request for new relief, rather than for reconsideration of a prior denial." *Id.* at 603. In other words, we concluded that even if the relief ultimately sought in a motion to reopen "is formally the same as [the relief that] was previously denied," *id.* at 601, and even if the BIA denies the motion to reopen on the ground that it fails to establish a prima facie case, we have jurisdiction to review the BIA's decision as long as the evidence submitted with the motion is "different in kind" than the evidence that was presented during the hearing. *Id.* at 603; *see also Negrete v. Holder*, 567 F.3d 419, 421-22 n.1 (9th Cir. 2009). In short, we

have jurisdiction where the relief is the same but the basis or reason for it is different.

The government makes two arguments about the effect of *Fernandez* on the case at hand. First, it argues that *Fernandez's* statements regarding motions to reopen based on non-cumulative evidence are dicta and that we need not, and should not, follow them. Second, it contends that even if those statements are not dicta, we still lack jurisdiction over the BIA's denial of the Garcias' motion to reopen because the evidence that the Garcias sought to present was cumulative of the evidence that they had presented before the BIA. We reject both arguments.

**[3]** First, the relevant statements in *Fernandez*, discussed above, are not dicta. "While we have used a number of verbal formulations to describe 'dictum,' we treat reasoning central to a panel's decision as binding later panels." *Sanchez v. Mukasey*, 521 F.3d 1106, 1110 (9th Cir. 2008); *see also Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) ("[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.") (quoting *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (opinion of Kozinski, J.) (plurality)). The scope of this court's jurisdiction over motions to reopen that seek a type of discretionary relief previously denied was the "central issue considered" in *Fernandez. Sanchez*, 521 F.3d at 1110. The distinction between motions that are based on cumulative evidence and those that are based on non-cumulative evidence was expressly adopted by the court "after reasoned consideration," *Miranda B.*, 328 F.3d at 1186, in order "to support its result . . . ." *Sanchez*, 521 F.3d at 1110. Accordingly, what we said in *Fernandez* "cannot be ignored as dictum." *Id.* We are thus bound to follow the rule established in *Fernandez*: this court has jurisdiction to review BIA decisions on motions to reopen that

present evidence that is "so distinct from that considered pre- viously as to make the motion to reopen a request for new relief, rather than for reconsideration of a prior denial." *Fer- nandez*, 439 F.3d at 603. We reaffirm that rule here.[4]

[4] Next, we conclude that, with the exception of the doc- tor's report regarding Analilia's mother's cholesterol prob- lem, the evidence that the Garcias submitted or sought to submit in connection with their motion to reopen and with a subsequently submitted "supplemental brief" was non- cumulative and different in kind from the evidence that they had presented during their IJ hearing. They seek a favorable hardship determination on two different grounds, neither of which they raised at that hearing. As described *supra*, p. 13125-26, the Garcias' hardship evidence at their IJ hearing centered on the educational, cultural, and economic chal- lenges that their daughters would face in Mexico. In contrast, their motion to reopen claimed hardship to Mariela on a wholly different basis: her "disfiguring" keloid and the lack of safe medical facilities in Mexico for treatment. The keloid was completely unrelated to and different in kind from Mar- iela's vision problem, which the Garcias had mentioned briefly at their hearing. Similarly, at their IJ hearing, the Gar- cias had alleged hardship to Analilia's mother on the basis of her high cholesterol. Their supplemental brief, accompanied by a doctor's report, purportedly presented a new, entirely distinct medical affliction: a "pre-cancerous condition in her cervix." Mariela's keloid and Analilia's mother's pre- cancerous condition are not cumulative of the hardship evi- dence offered during the hearing. Accordingly, under *Fernan- dez*, we have jurisdiction to review the BIA's decisions as to

---

[4]We do not suggest that the legal question decided in *Fernandez* was a simple or an easy one, or that an argument to the contrary would be frivo- lous. We do hold, however, that *Fernandez* adopted a rule and did not merely express its non-binding views. We also note that the rule *Fernan- dez* adopted was based on a thorough and careful legal analysis of the stat- utory language and relevant cases. *See Fernandez*, 439 F.3d 592. We need not recite that analysis again here.

those two matters for an abuse of discretion, and not just for an error of law.

### III.

We turn now to the merits of the Garcias' claim. A motion to reopen must be based on evidence that is "material and [that] was not available and could not have been discovered or presented at the former hearing." 8 C.F.R. § 1003.2(c)(1). The motion will not be granted unless it establishes a prima facie case for relief. *See Fernandez*, 439 F.3d at 600 n.6 (describing the origins of the prima facie case requirement). A prima facie case is established when "the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied." *Ordonez v. INS*, 345 F.3d 777, 785 (9th Cir. 2003).

The BIA denied the Garcias' motion to reopen because it did not "find that the evidence presented [regarding Mariela's medical condition] would likely change the outcome on the issue of whether the respondents have established exceptional and extremely unusual hardship sufficient to satisfy their burden of proof for cancellation of removal." We review the BIA's decision for abuse of discretion. *Bhasin v. Gonzales*, 423 F.3d 977, 983 (9th Cir. 2005).

The evidence that the Garcias submitted with their initial motion to reopen consisted of three documents. The first was a letter from Dr. Barry LoSasso diagnosing Mariela with "a severe keloid involving the right external ear at a point where [she] had a previous piercing and an infection following that piercing." Dr. LoSasso opined that the keloid would not "lend itself to simple steroid injections" and recommended that Mariela see a plastic surgeon "specializing in external ear reconstruction in children born with deformities of the external ear" who "could comment further about the problem and any potential medical or surgical solutions." The second document was a consultation request form dated October 13,

2006. It refers Mariela for evaluation and treatment of a "disfiguring" and "severe" keloid on her right external ear. The third was a San Antonio Express-News investigative report about the risks of plastic surgery in Mexico. The article noted that while some clinics "offer American-style standards," many are "backward operations run by physicians of questionable credentials."

The Garcias argue that this evidence shows that, if they are removed to Mexico, Mariela will have to undergo surgery under unsanitary and inadequate clinical conditions, putting her health in serious danger. The BIA disagreed, finding that:

> According to the evidence presented, [Mariela's] condition is not life-threatening and removal of the keloid is not mandated. Further, it appears that the condition can likely be remedied, if desired, with potential medical and non-surgical solutions. There was no evidence presented to show that surgery is the only remedy for the child's condition which apparently is usually handled with steroid injections. Additionally, the evidence presented indicates that there are well-equipped, clean surgical facilities with accredited surgeons in Mexico wherein the child may undergo surgery. Alternatively, should surgery be recommended, no evidence was presented to establish that the child could not return to the United States to undergo the procedure.

[5] The BIA did not abuse its discretion in evaluating the Garcia's evidence or in finding that Mariela's keloid condition was insufficient cause to warrant reopening the Garcias' proceedings. *Bhasin*, 423 F.3d at 983. The "exceptional and extremely unusual hardship" standard is a very demanding one. Although the BIA might have concluded that Mariela's condition was such as to warrant reopening, it did not abuse its discretion by concluding otherwise.

The Garcias next argue that the BIA committed legal error by failing entirely to address the evidence of Analilia's mother's medical condition, submitted in conjunction with their supplemental brief. The supplemental brief and evidence were submitted on December 18, 2006, approximately one month after the Garcias filed their timely motion to reopen, and approximately two months before the BIA issued its decision. In a motion attached to the supplemental brief, the Garcias' lawyer declared that the brief was late because "the relevant documentation was provided to [his] office [by the Garcias] after the filing of the motion to reopen." In the brief itself, the Garcias argued that reopening was warranted on account of "new medical conditions" afflicting Analilia's lawful permanent resident mother. They attached two doctors' reports purporting to document those conditions. Although one of the reports related to high cholesterol, a report that is merely cumulative of the evidence testified to at the IJ hearing, the second report purportedly documented a new condition as it related to a screening for a potential "malignant neoplasm of the cervix."

[6] In its decision denying the Garcias' motion to reopen, the BIA failed entirely to address the supplemental brief and the attached exhibit allegedly establishing a pre-cancerous condition. The decision whether to consider the brief and the exhibit was, as we have stated, within the BIA's discretion. *See* BIA Practice Manual 4.6(g) (setting forth rules regarding the filing of supplemental briefs); *see also* 8 C.F.R. § 1003.2(a) (stating that the BIA has the discretion to reopen a case to consider new evidence "at any time"). However, the BIA was required to *exercise* that discretion. Its failure to do so was legal error. *See Sagaydak v. Gonzales*, 405 F.3d at 1040. We must therefore remand for the purpose of directing the BIA to exercise its discretion regarding the Garcias' supplemental brief and the evidence submitted along with it.

DENIED in part, GRANTED in part, and REMANDED for exercise of discretion.

Each party shall bear its own costs on appeal.