**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARTIN NOE MORAN,
                              *Petitioner,*

v.

JOHN ASHCROFT, Attorney General,
                              *Respondent.*

No. 02-73551

Agency No.
A75-677-283

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 9, 2004—Pasadena, California

Filed January 20, 2005

Before: Betty B. Fletcher, Pamela Ann Rymer, and
Richard A. Paez, Circuit Judges.

Opinion by Judge Betty B. Fletcher;
Concurrence by Judge Betty B. Fletcher

## COUNSEL

Cass W. Christenson, McKenna Long & Aldridge, Washington, DC, for the petitioner.

Nicole Nardone, U.S. Department of Justice, Washington, DC, for the respondent. With her on the briefs was Jamie M. Dowd.

## OPINION

B. FLETCHER, Circuit Judge:

Martin Noe Moran ("Moran") petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the finding of the Immigration Judge ("IJ") that Moran was ineligible for cancellation of removal because he encouraged two aliens to enter the country illegally. The aliens he encouraged are his wife and son. While the statutory scheme governing the requirements for cancellation of removal preserves eligibility for individuals whose involvement in "alien smuggling" is limited to helping their own family members, including spouses and children, the statutory provisions make clear that for acts of smuggling occurring after May 5, 1988, the "family member" waiver does not apply to a spouse who was not a spouse at the time of the smuggling. Because Moran and his wife were married *after* he helped her enter the country illegally, he does not fall within the exception to the alien smuggling provision, and his involvement in helping his son and his future wife (the mother of his son) cross the border in 1993 renders him ineligible for cancellation of removal. We must therefore deny the petition for review.

## I.  BACKGROUND

Martin Noe Moran, a native and citizen of Mexico, arrived in the United States on April 15, 1989.[1] In January 2000,

---

[1]The IJ's finding that Moran arrived in 1992 is not supported by substantial evidence. Moran testified that he arrived on April 15, 1989. The record shows that Moran only briefly departed in 1991 to care for a sick parent. Because the record clearly shows that Moran was in Mexico for fewer than ninety days, his trip to Mexico did not interrupt his continuous presence in the United States, and so the correct date of entry is April 15, 1989. *See* 8 U.S.C. § 1229b(d)(2).

Moran was served with a notice to appear charging removability under Immigration and Nationality Act section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being an alien present in the United States without having been admitted or paroled.

At his removal hearing, Moran conceded removability. He also testified that he agreed to pay smugglers to help the woman who is now his wife, Ana Yuki Moran, and their son illegally enter the United States from Mexico.[2] Specifically, Moran testified that he told Ana he wanted her and their son to come to live with him in the United States and he would be willing to help pay for people to smuggle them across the border. Moran testified that he knew Ana and their son would be using the services of smugglers to enter the United States. Ana made the initial arrangements with the smugglers, but prior to the actual border-crossing, Moran and Ana's parents agreed to pay the smugglers. Once Ana and their son were in the United States, Moran paid his share of the smugglers' fee.

After the hearing, Moran applied for cancellation of removal. Finding that Moran failed to meet the good moral character requirement because he encouraged his future wife and his son to enter the United States illegally, the IJ denied Moran's application for cancellation of removal and granted Moran voluntary departure to Mexico. Moran appealed to the BIA, which summarily affirmed the IJ's order.

Moran timely petitioned this court for review.

## II.   JURISDICTION

We have jurisdiction under 8 U.S.C. § 1252(a)(1) to review

---

[2]Ana and the Morans' son crossed the border illegally in 1993. Ana and Martin were married in 1996. For clarity, we shall refer to Ana Yuki Moran by her first name to distinguish her from petitioner, whom we call simply "Moran."

a final order of removal. Included within our jurisdiction is review of non-discretionary legal determinations regarding an alien's eligibility for cancellation of removal. *See Montero-Martinez v. Ashcroft*, 277 F.3d 1137, 1144 (9th Cir. 2002). Although we lack jurisdiction to review discretionary determinations of moral character, we have jurisdiction to determine whether a petitioner's conduct falls within a per se exclusion category, an issue that relates to eligibility for cancellation. *See Romero-Torres v. Ashcroft*, 327 F.3d 887, 890 (9th Cir. 2003).

## III.   ANALYSIS

### A.   The IJ's Factual Findings

We review BIA findings of fact for substantial evidence. *Azanor v. Ashcroft*, 364 F.3d 1013, 1018 (9th Cir. 2004).

It is undisputed that Ana and the Morans' son entered the country illegally in March 1993 with the help of paid smugglers, that Moran provided a portion of the smugglers' fee, and that Moran made the payment to the smugglers after Ana and their son were already in the United States. But Moran contests the IJ's conclusion that he encouraged Ana and their son to enter the United States illegally. Moran argues that Ana acted alone in hiring the smugglers. Moran admits he paid the smugglers after Ana and their son had been brought into the United States, but he claims that this was a payment made after the fact to protect his family from the smugglers.

The record contradicts Moran's interpretation of events. At the hearing before the IJ, Moran testified: "I told her, if you want to come, do it any time that you want to. . . . I told her that I wanted my son, my wife, my whole family to live here with me, because it[']s very hard to live alone." The IJ then asked Moran, "All right well when you told her that you wanted her to return to the United States, did you tell her that she would have to hire a smuggler for that purpose and that

you were willing to help pay for the expense of the smuggler?" Moran responded, "Yes it[']s customary, when a person comes to the United States, you have to enlist a service of a smuggler."

**[1]** Moran argues to this court that the IJ's question was leading and that Moran's answer "only stated the obvious," i.e., that illegal entry requires the services of a smuggler. But other testimony from the hearing corroborates the IJ's understanding of Moran's answer. Moran testified that he knew beforehand that Ana and their son would be smuggled into the United States and the smugglers would expect payment. When the IJ asked him whether he "let [Ana] know that [he was] willing to help pay the expense of the smuggler," Moran answered "yes." The record also indicates that Moran made an agreement with Ana's parents about paying the smugglers: Moran would pay for Ana, and her parents would pay for the Morans' son. When the IJ asked Moran whether the payment agreement between Moran and Ana's parents was made prior to Ana's hiring of the smuggler, Moran answered "yes." Moran even testified that Ana called from Tijuana, right before she and their son crossed the border, to confirm that Moran would have the money for the smugglers. The record thus provides substantial evidence to support the IJ's conclusion that Moran encouraged Ana and their son to enter the country illegally.

## B. Eligibility for Cancellation of Removal

**[2]** In order to be eligible for cancellation of removal, Moran must have "been a person of good moral character" during the continuous 10-year period of physical presence required by the statute. 8 U.S.C. § 1229b(b)(1)(B). The definitions section provides that an individual shall not be regarded as a person of good moral character if the individual is "a member of one or more of the classes of persons, whether inadmissible or not, described in paragraphs (2)(D), (6)(E), and (9)(A) of section 1182(a) of this title." 8 U.S.C.

§ 1101(f)(3). Relevant to Moran's case is 8 U.S.C. § 1182(a)(6)(E), which provides:

Smugglers

(i) In general

Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible.

(ii) Special rule in the case of family reunification

Clause (i) shall not apply in the case of [an] alien who is an eligible immigrant (as defined in section 301(b)(1) of the Immigration Act of 1990), was physically present in the United States on May 5, 1988, and is seeking admission as an immediate relative or under section 1153(a)(2) of this title (including under section 112 of the Immigration Act of 1990) or benefits under section 301(a) of the Immigration Act of 1990 if the alien, before May 5, 1988, has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

(iii) Waiver authorized

For provision authorizing waiver of clause (i), see subsection (d)(11) of this section.

The waiver section provides, in turn:

> The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) of this section in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a returning resident under section 1181(b) of this title and in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title (other than paragraph (4) thereof), if the alien has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

8 U.S.C. § 1182(d)(11).

**[3]** The application of this statutory scheme in the cancellation of removal context is an issue of first impression in the Ninth Circuit. *Cf. Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000) (applying the alien smuggling rule to the good moral character requirement in the context of a determination of eligibility for voluntary departure). As the referenced statutory sections relating to alien smuggling are written to apply to inadmissibility and not to cancellation of removal, it is necessary to extrapolate from these provisions in order to make sense of them in the cancellation of removal context while giving effect to the family unification policies Congress expressed in the statute. *See* 8 U.S.C. § 1182(a)(6)(E)(ii) (entitled "Special rule in the case of family reunification"); *id.* § 1182(d)(11) (providing for waiver specifically "to assure family unity").

**[4]** Translating the alien-smuggling inadmissibility provision and its exceptions into the language of cancellation of removal requires that we replace references to admissibility, applications for admission, and adjustment of status with references to cancellation of removal. *See Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004) (explaining that the cancellation of removal statute must be read "to cross-reference [the relevant concepts] in [other] statutes, rather than the statutes as a whole"). Doing so yields the following set of rules:

1. An alien fails the good moral character requirement for cancellation of removal if, during the relevant period of continuous physical presence, the alien "at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E)(i).

2. However, an alien does not fail the good moral character requirement for cancellation of removal if the alien "is an eligible immigrant (as defined in section 301(b)(1) of the Immigration Act of 1990 [set out as a note to 8 U.S.C. § 1255a]), was physically present in the United States on May 5, 1988," and "before May 5, 1988, has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law." 8 U.S.C. § 1182(a)(6)(E)(ii).

3. The alien also does not fail the good moral character requirement for cancellation of removal where the Attorney General exercises discretion to waive the applicability of § 1182(a)(6)(E)(i). Such discretion may be exercised "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest," to waive the applicability of the

alien-smuggling provision to the good moral charac-
ter determination of an applicant for cancellation of
removal who "has encouraged, induced, assisted,
abetted, or aided only an individual who at the time
of such action was the alien's spouse, parent, son, or
daughter (and no other individual) to enter the
United States in violation of law." 8 U.S.C.
§ 1182(d)(11)   (cross-referenced   by   8   U.S.C.
§ 1182(a)(6)(E)(iii)).

**[5]** Because cancellation of removal is discretionary in any
event, the exception and the waiver provisions have the same
effect on the eligibility of an applicant for cancellation of
removal: where an applicant qualifies under either paragraph
(2) or paragraph (3) above, the alien-smuggling provision of
paragraph (1) does not operate to deny the applicant statutory
eligibility under 8 U.S.C. § 1229b(b)(1)(B) for cancellation of
removal. In the case of an applicant who falls under paragraph
(2) above, eligibility is preserved as a matter of law. In the
case of an applicant who meets the criteria for a waiver under
paragraph (3) above, eligibility is preserved because the
Attorney General may waive the applicability of the alien-
smuggling provision as part of the discretionary grant of can-
cellation of removal. Therefore an applicant for cancellation
of removal who lacks good moral character under paragraph
(1) above nonetheless remains eligible for cancellation of
removal if the applicant qualifies for the exception under
paragraph (2) above or the waiver under paragraph (3) above.

**[6]** Applying these rules to Moran's case is straightforward.
Moran's encouragement of his son's and future wife's illegal
entry did not occur before May 5, 1988; therefore, Moran is
ineligible for the exception to the alien smuggling rule under
8 U.S.C. § 1182(a)(6)(E)(ii). Moran *would* be eligible for the
waiver of the alien-smuggling rule under 8 U.S.C.
§ 1182(a)(6)(E)(iii) *if* the only individuals he had helped
smuggle into the country were his son and his spouse. How-
ever, Ana was not yet Moran's wife when he helped her and

their son enter illegally. The applicable language of 8 U.S.C. § 1182(d)(11) is very clear: the waiver applies to an individual who "has encouraged, induced, assisted, abetted, or aided only an individual who *at the time of such action* was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law." Therefore, Moran is ineligible for waiver of the alien-smuggling provision.[3]

## CONCLUSION

**[7]** Because the IJ's finding that Moran falls within the terms of the alien-smuggling provision is supported by substantial evidence and no exception or opportunity for waiver applies, Moran does not satisfy the prerequisites for cancellation of removal. The result we reach here, though at odds with Congress's intent to promote family unification, is compelled by the text of the provisions that comprise the statutory scheme.

**PETITION DENIED.**

---

B. FLETCHER, Circuit Judge, concurring:

This case is but one example of the harsh effects and unintended consequences current immigration laws visit upon immigrant families. Punishing Martin Moran for endeavoring to bring his family together could hardly be more antithetical

---

[3]A Moran also claims he was denied a full and fair hearing, but the government correctly asserts that we lack jurisdiction over this claim because Moran failed to raise it before the BIA and therefore has not exhausted his administrative remedies. Moran's claim is not of a type that is exempt from the exhaustion requirement. *See Barron v. Ashcroft*, 358 F.3d 674, 678 (9th Cir. 2004) (recognizing that due process claims may be among the constitutional challenges exempt from the exhaustion requirement, but "only if they involve more than 'mere procedural error' that an administrative tribunal could remedy").

to Congress's stated goal of promoting family unification in immigration law. To say that Moran's efforts to be with his son and his son's mother reflect a lack of "good moral character" grossly distorts the meaning of that term, and it is with a heavy heart that I apply this statutory classification today. That the denial of Moran's petition is required by the law does not make this result — or this law — just.