**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIO SANCHEZ,

*Petitioner,*

v.

ERIC H. HOLDER, JR., Attorney
General,*

*Respondent.*

No. 04-75584

Agency No.
A077-832-827

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 15, 2008—Pasadena, California

Filed March 26, 2009

Before: Alex Kozinski, Chief Judge, Harry Pregerson,
Diarmuid F. O'Scannlain, Pamela Ann Rymer,
Andrew J. Kleinfeld, Barry G. Silverman,
M. Margaret McKeown, Raymond C. Fisher,
Richard A. Paez, Consuelo M. Callahan and N. Randy Smith,
Circuit Judges.

Opinion by Judge Silverman;
Concurrence by Judge Paez;
Dissent by Judge Pregerson

*Eric H. Holder, Jr. is substituted for his predecessor, Michael B.
Mukasey, as Attorney General of the United States. Fed. R. App. P.
43(c)(2).

## COUNSEL

Frank P. Sprouls, Ricci & Sprouls, San Francisco, California, for the petitioner.

Manuel Palau, Department of Justice, Washington, D.C., for the respondent.

## OPINION

SILVERMAN, Circuit Judge:

Mario Sanchez petitions for review of the Board of Immigration Appeals's affirmance of the Immigration Judge's decision denying him cancellation of removal because he could not meet the "good moral character" requirement of 8 U.S.C. § 1229b(b)(1). Persons who have knowingly encouraged or assisted other aliens to enter the United States illegally may not be found to have good moral character. 8 U.S.C. §§ 1101(f)(3), 1182(a)(6)(E). In the inadmissibility context, such persons may obtain a waiver of inadmissibility if the only person smuggled into the U.S. was their own spouse, parent, son, or daughter. 8 U.S.C. § 1182(d)(11). We took this case en banc to resolve whether the alien smuggling *inadmissibility* waiver in § 1182(d)(11) applies to an application for *cancellation of removal*. May an applicant for cancellation of removal demonstrate good moral character notwithstanding his participation in family-only smuggling?

We hold today that he cannot, overruling *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir. 2005).

## I. Facts

Sanchez first entered the United States in April 1988 without inspection, and resided here without lawful status. He has left the United States only once since then, returning to Mexico for three weeks in August 1993 to get married. After the wedding, he paid a "coyote" $1,000 to smuggle himself and his new wife into the United States.

In May 2000, the Immigration and Naturalization Service charged Sanchez with removability as an alien found present in the United States without being admitted or paroled. Sanchez conceded removability and requested cancellation of removal pursuant to 8 U.S.C. § 1229b(b) on the ground that removal would result in exceptional and extremely unusual hardship to his U.S. citizen children and lawful permanent resident father. After a hearing, the IJ found that Sanchez had met the statutory qualifications for cancellation of removal in all but one respect: he was barred from establishing good moral character because he helped his wife enter the country illegally in 1993. The IJ reasoned that Sanchez's conduct made him "a member of one or more of the classes of persons" — in this case, a smuggler under 8 U.S.C. § 1182(a)(6)(E) — who by statute cannot be found to have good moral character. *See* 8 U.S.C. § 1101(f)(3). In an unpublished decision, the BIA affirmed the IJ's decision. The Board reasoned that Sanchez's "smuggling activities d[id] not fall within the exceptions to section 212(a)(6)(E)(i) of the Act listed in clauses (ii) and (iii) of that provision." *See* 8 U.S.C. § 1182(a)(6)(E)(ii), (iii).

Sanchez petitioned for review. When this case was before the three-judge panel in *Sanchez v. Mukasey*, 521 F.3d 1106, 1110 (9th Cir. 2008), the panel granted the petition, holding that the reasoning of our 2005 decision in *Moran v. Ashcroft*

controlled. In *Moran*, the court "translat[ed]" the "family unity" waiver of inadmissibility in § 1182(d)(11), which is referenced in § 1182(a)(6)(E)(iii) "into the language of cancellation of removal" to hold that an alien applying for cancellation of removal "*would* be eligible for the waiver . . . *if* the only individuals he had helped smuggle into the country were his son and his spouse." 395 F.3d at 1093-94. The panel in this case noted the tension between *Moran* and *Khourassany v. INS*, 208 F.3d 1096, 1101 (9th Cir. 2000). *Khourassany* held that an alien who had paid a smuggler to bring his wife and child into the United States illegally from Mexico could not meet the "good moral character" requirement for voluntary departure, and that "[n]o exceptions or other waivers to the alien smuggler provision appl[ied]." *Id.*

The three-judge panel in the case at bar held that under the reasoning, albeit not the actual holding, of *Moran*, Sanchez appeared to be eligible for the family unity waiver. *Sanchez*, 521 F.3d at 1110. Judge Wallace, writing separately, suggested that the conflict between *Moran* and *Khourassany* should be resolved by the en banc court, and that *Moran* "disregard[ed] the plain meaning of the relevant statutes." *Id.* at 1111, 1114 (Wallace, J., writing separately). It is in this context that we reheard en banc the petition for review.

## II.   Analysis

In reviewing the agency's construction of a statute under *Chevron*, the first question we confront is "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). Because we find the meaning of the statutory text to be clear, "that is the end of the matter," and we need not take advantage of agency expertise in construing the statute. *Id.* at 842-43.

[1] "In attempting to determine the meaning of a statute, 'we look first to the plain meaning . . . and give effect to that

meaning where fairly possible.' " *Gomez-Lopez v. Ashcroft*, 393 F.3d 882, 885 (9th Cir. 2005) (quoting *Lagandaon v. Ashcroft*, 383 F.3d 983, 987 (9th Cir. 2004)). The statute governing cancellation of removal and adjustment of status for certain nonpermanent residents like Sanchez, 8 U.S.C. § 1229b(b)(1) (2006), requires that the alien:

> (A) ha[ve] been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) ha[ve] been a person of good moral character during such period;
>
> (C) ha[ve] not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) . . . ; and
>
> (D) establish[ ] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

Here, the IJ found that Sanchez met each of the statutory criteria except (B), requiring good moral character.

  **[2]** The definition of "good moral character" is in 8 U.S.C. § 1101(f) (2006). It states:

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was —
>
>     . . .

(3) a member of one of more of the classes of persons, *whether inadmissible or not*, described in paragraphs (2)(D), (6)(E), and (10)(A) of section 1182(a) of this title; or subparagraphs (A) and (B) of section 1182(a)(2) of this title and subparagraph (C) thereof of such section (except as such paragraph relates to a single offense of simple possession of 30 grams or less of marihuana), if the offense described therein, for which such person was convicted or of which he admits the commission, was committed during such period . . . .

8 U.S.C. § 1101(f)(3) (2006) (emphasis added). 8 U.S.C. § 1182(a)(6)(E)(i) in turn defines "[s]mugglers" — aliens who have at any time "knowingly . . . encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law."

**[3]** Sanchez is a member of one of the "classes of persons" that cannot establish good moral character because he admitted to aiding his wife to enter the United States illegally by paying a coyote to smuggle her across the border. Thus, under the terms of the good moral character definition, he cannot establish good moral character, *whether he is inadmissible or not*. 8 U.S.C. § 1101(f)(3). Sanchez now argues that § 1182(d)(11), which provides a waiver of inadmissibility, should nonetheless permit him to establish good moral character because he smuggled only his spouse into the United States. That section states:

The Attorney General may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a return-

ing resident under section 1181(b) of this title and in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title . . . , if the alien has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

**[4]** The problem with Sanchez's argument is that the family unity waiver of inadmissibility is irrelevant to whether an alien smuggler can establish good moral character under § 1101(f). Since Sanchez falls within one of the "classes of persons" that cannot establish good moral character, the plain terms of the good moral character statute make his admissibility status irrelevant. Section 1101(f) specifically says: "[n]o person . . . who . . . is . . . a member of one or more of the classes of persons, *whether inadmissible or not*," may establish good moral character" (emphasis added). Thus, the waiver of *inadmissibility* for lawful permanent residents and aliens seeking admission or adjustment of status as an immediate relative or immigrant under § 1153 who have smuggled only immediate family members has no bearing on whether an alien can establish good moral character. In other words, § 1182(d)(11) authorizes the Attorney General to waive inadmissibility if an alien has only smuggled immediate family members, but does not authorize the Attorney General to waive the "alien smuggling" bar to establishing good moral character for purposes of cancellation of removal. A statute giving the Attorney General discretion to grant relief from *inadmissibility* does not give the Attorney General discretion to grant relief from *removal*. *See Abebe v. Mukasey*, No. 05-76201, 2009 WL 50120, at *2 (9th Cir. Jan. 5, 2009) (en banc) (holding, in the equal protection context, that Congress's treating entering aliens differently from illegally present aliens passes rational basis review). Harmonizing § 1101(f) with § 1182(a)(6)(E), including the waiver autho-

rized by § 1182(a)(6)(E)(iii), we now hold that alien smugglers are one of the classes of persons that cannot be found to have good moral character for the purposes of cancellation of removal, whether they are inadmissible or not.

**[5]** This plain reading of 8 U.S.C. §§ 1101(f) and 1182(a)(6)(E) is consistent with other expressions of congressional intentions in this area. Congress has demonstrated that it knows how to create an exception to the "classes of persons" definitions within the text of § 1101(f)(3) itself when it wants to. Section 1101(f)(3) bars most "[c]ontrolled substance traffickers" from establishing good moral character, *see* 8 U.S.C. § 1182(a)(2)(C), but expressly exempts persons that have committed "a single offense of simple possession of 30 grams or less of marihuana." If Congress had intended to exclude family-only alien smugglers from the "class[ ] of persons" that cannot be found to have good moral character for cancellation of removal, it could have included a provision similar to the exception for controlled substance traffickers. *See United States v. Fiorillo*, 186 F.3d 1136, 1153 (9th Cir. 1999) (presuming that Congress acts purposefully when it includes an exception in one section of a statute but omits it in another).

Moreover, Congress has shown its willingness to override clearly and explicitly the basic definition of good moral character when it so desires. *See* 8 U.S.C. § 1229b(b)(2)(C) ("Notwithstanding section 1101(f) of this title, an act or conviction that does not bar the Attorney General from granting relief under this paragraph by reason of subparagraph (A)(iv) shall not bar the Attorney General from finding the alien to be of good moral character . . . ."). Congress's failure to create an exception or waiver to the alien smuggling bar to showing good moral character in the removal context supports the inference that Congress intended no such exception. *See Fiorillo*, 186 F.3d at 1153.

We note that, even if the family unity inadmissibility waiver did apply in the cancellation of removal context, San-

chez would not qualify for the waiver under the plain language of its text. The § 1182(d)(11) waiver may only apply "in the case of any alien lawfully admitted for permanent residence" who temporarily proceeded abroad, and is not subject to an order of removal and is otherwise admissible, and "in the case of an alien seeking admission or adjustment of status as an immediate relative or immigrant under section 1153(a) of this title." Sanchez does not fall within either category. His argument that the family unity waiver should be read to apply to three categories of persons — lawful permanent residents, aliens seeking admission, and aliens seeking adjustment of status as an immediate relative or immigrant under § 1153(a) — is belied by the statutory text. Congress made clear its intent to permit the waiver for two categories of persons — (1) lawful permanent residents; and (2) those aliens seeking admission or adjustment of status under § 1153(a) (i.e., those seeking a visa as a family-sponsored immigrant) — when it used the phrase "in the case of" before each of the two categories. To receive a waiver under the second clause, an alien must be using § 1153(a) to seek either admission or adjustment of status. Sanchez's contention that any alien seeking admission may qualify for the waiver, regardless of whether he proceeds under § 1153(a) or not, would open the waiver to virtually any alien smuggler, a result that would be contrary both to the statutory text and to the intent that Congress has demonstrated elsewhere in the statute.

**[6]** A plain reading of § 1182(d)(11) manifests Congress's intent to limit alien smuggling waivers to certain defined classes of persons. The waiver provision at issue here, 8 U.S.C. § 1182(d)(11), only applies to "alien[s] lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of removal, and who [are] otherwise admissible," and aliens seeking "admission or adjustment of status as an immediate relative or immigrant under section 1153(a)." A similar family unity waiver governing persons removable as alien smugglers applies also only to persons "lawfully admitted for permanent residence."

8 U.S.C. § 1227(a)(1)(E)(iii) (2008). It is not irrational for Congress to provide family unity waivers only to persons who have complied with immigration laws by becoming lawful permanent residents or to those seeking admission or adjustment of status by applying for a visa, and not to aliens who entered without inspection and then attempted to smuggle others in after them. *See Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (noting Congress's "broad power" over immigration and naturalization). Applying the plain language of §§ 1229b and 1101(f) would not lead to a "patently absurd" result, nor an unintended result. *See Amalgamated Transit Union Local 1309 v. Laidlaw Transit Servs., Inc.*, 448 F.3d 1092, 1098 (9th Cir. 2006).

**[7]** We conclude that *Moran*'s "translation" of § 1182(d)(11) into the cancellation of removal context is at odds with the plain meaning of §§ 1229b(b), 1101(f), and 1182(a)(6)(E). The family unity waiver of inadmissibility contained in § 1182(d)(11) does not permit petitioner to demonstrate good moral character.[1] Accordingly, the petition for review is DENIED.

---

PAEZ, Circuit Judge, concurring:

I agree with the majority that Sanchez is ineligible for the family unity waiver here because he is neither an "alien law-

---

[1] In his brief on appeal, Sanchez challenged whether substantial evidence supported the IJ's decision that he was an "alien smuggler." Sanchez asserted that, because he was a principal and a co-defendant (with his wife) in the crime of illegal entry, he could not be a smuggler, as he could not aid and abet his own crime. After review of the record, we find that substantial evidence supports the IJ's decision. Counsel also waived this argument at oral argument. Sanchez's further argument that his admission of alien smuggling could not be used against him because he had not been advised of the elements of the crime of alien smuggling lacks merit. *See Urzua Covarrubias v. Gonzalez*, 487 F.3d 742, 749 (9th Cir. 2007).

fully admitted for permanent residence who temporarily proceeded abroad," nor "an alien seeking admission or adjustment of status as an immediate relative or immigrant under [8 U.S.C. § 1153(a)]." 8 U.S.C. § 1182(d)(11). I therefore concur in the result.

I am not persuaded, however, that the statutory language makes "plain" that the 8 U.S.C. § 1182(a)(6)(E) waivers are inapplicable to an evaluation of moral character. Mj. Opin. at 3634. The moral character provision states that "[n]o person shall be . . . found to be[ ] a person of good moral character" if they are or were a member of certain "classes of persons . . . described in" § 1182(a), including those described in paragraph (6)(E). 8 U.S.C. § 1101(f)(3). Paragraph (6)(E) states:

(E)  Smugglers

(i) In general

Any alien who at any time knowingly has encouraged, induced, assisted, abetted, or aided any other alien to enter or to try to enter the United States in violation of law is inadmissible.

(ii) Special rule in the case of family reunification

Clause (i) shall not apply in the case of alien who is an eligible immigrant (as defined in section 301(b)(1) of the Immigration Act of 1990), was physically present in the United States on May 5, 1988, and is seeking admission as an immediate relative or under section 1153(a)(2) of this title (including under section 112 of the Immigration Act of 1990) or benefits under section 301(a) of

the Immigration Act of 1990 if the alien, before May 5, 1988, has encouraged, induced, assisted, abetted, or aided only the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

(iii) Waiver authorized

For provision authorizing waiver of clause (i), see subsection (d)(11) of this section.

8 U.S.C. § 1182(a)(6)(E).

At issue here is thus how the "class[ ] of persons . . . described in paragraph[ ] (6)(E)" is defined. The majority today finds it clear that this class is described solely in subparagraph (6)(E)(i), emphasizing that the moral character provision bars those "whether inadmissible or not" who fall within the classes listed in § 1101(f)(3).[1] However, I find it at least equally plausible that the relevant class is that described by (6)(E) *in its entirety* — both the general definition offered in (6)(E)(i) and the exceptions to that definition provided by (6)(E)(ii) and (iii). This construction comports with the plain language of the moral character provision, which points to the class described in (6)(E) rather than that described in

---

[1]The "whether inadmissible or not" language sheds little light on the question of whether the exceptions apply. As the BIA has observed, that language was likely inserted to clarify that § 1101(f) and § 1182, an inadmissibility statute, are applicable to aliens in other proceedings. *See In re M-*, 7 I. & N. Dec. 147, 150-51 (BIA 1956) (observing that the predecessor phrase "whether excludable or not" was inserted "because it was considered necessary in order to guard against a possible interpretation that section [1101(f)(3)] did not relate to aliens applying for voluntary departure and suspension of deportation"); *In re Garcia-Hernandez*, 23 I. & N. Dec. 590, 593 n.2 (BIA 2003) ("whether inadmissible or not" phrase is meant to assure applicability beyond the admissibility context).

(6)(E)(i). Moreover, this is how the BIA has interpreted the moral character provision for over fifty years. *See In re M-*, 7 I. & N. Dec. 147, 149-51 (BIA 1956); *In re Garcia-Hernandez*, 23 I. & N. Dec. 590, 593 (BIA 2003) (noting that "the 'description' of the category . . . also includes the exception"). Because I find the statute ambiguous as to whether the exceptions are included within the description of the class, I would defer to the BIA's reasonable answer that they are so included. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council Inc.*, 467 U.S. 837, 843 (1984). I would therefore hold that the 6(E)(iii) waiver is applicable to a determination of good moral character.

I also write separately to note that while the statutory scheme as interpreted here may not be "patently absurd," mj. opin. at 3636, it does appear "antithetical to Congress's stated goal of promoting family unification in immigration law." *Moran v. Ashcroft*, 395 F.3d 1089, 1095 (9th Cir. 2005) (Fletcher, J., concurring). In justifying the availability of the waiver to those applying for admission but not to those applying for cancellation of removal, the majority asserts that it is rational for Congress to draw a distinction between those who have entered the United States unlawfully and those who, despite helping others to enter illegally, are themselves seeking admission through the proper legal channels. Mj. opin. at 3636. This may be true, but it is harder to explain the distinction between those who have entered the United States illegally and those who have both entered the United States illegally and have helped their "spouse, parent, son, or daughter" to do so. Under current law, a person who has helped only himself is eligible for humanitarian relief from deportation to prevent "exceptional and extremely unusual hardship to the alien's [lawfully present] spouse, parent, or child." 8 U.S.C. § 1229b(b)(1). However, a person who has also helped an immediate family member enter the country is ineligible for such relief because, under the law as interpreted here, he necessarily lacks "good moral character." In short, a person who leaves his family behind as he seeks better opportunities

in the United States may have good moral character, but a person who attempts to bring a spouse or child along may not. This not only makes little sense in the context of a family unity provision, but "grossly distorts the meaning of" the term "good moral character." *Moran*, 395 F.3d at 1095 (Fletcher, J., concurring); *see also* Pregerson dissent at 3644.

Fortunately, as the majority notes, Congress "knows how to create an exception" to the classes of persons deemed necessarily lacking in good moral character. Mj. opin. at 3634. A clear pronouncement by Congress that the family unity policy behind the "family smuggling" exception in the admissibility context applies equally to moral character and cancellation of removal determinations would ensure that people like Mr. Sanchez — by all accounts a model employee, son, husband, and father to three American children, *see* Pregerson dissent at 3640-41, 3644 — would not be summarily deported for endeavoring to keep their families together while seeking a better life.

---

PREGERSON, Circuit Judge, dissenting:

This is a story about an industrious young man, Mario Sanchez ("Sanchez"), who was born into poverty in La Palma, Mexico, and forced by circumstances to drop out of ninth grade to help support his mother, father, and five siblings. Sanchez worked at a restaurant as a dishwasher and a preparer of food, and then at a warehouse. In April 1988, when Sanchez was twenty-two years old, he entered the United States without inspection in search of a better life. He found a job in Oakland, California operating the large metal press machine at a scrap metal company, worked hard, and saved his money. Five years later he took three weeks off work and returned to his hometown in Mexico to marry his sweetheart. He paid a "coyote" $1,000 to help him and his bride Ana cross the border.

Mario and Ana Sanchez established a home in Oakland in 1993. They have three U.S. born children, Oswaldo, Isidoro, and Mario Jr., now aged six, twelve, and fourteen years respectively. At the time the IJ made his decision, the children were nine months, six years, and nine years old. The IJ noted that Isidoro and Mario Jr. were "doing quite well . . . in school," and that Mario Jr. was enrolled in his school's "gifted and talented children" program. Sanchez also testified that Mario Jr. and Isidoro had earned medals in school mathematics competitions.

Both Mario and Ana Sanchez work full-time. Together they earn an annual income of around $40,000. Sanchez has a steady and consistent employment history. For thirteen years Sanchez worked for the scrap metal company in Oakland. In 2001, Sanchez found a better job as a forklift operator.

Sanchez paid his income taxes every year from 1988 until his marriage in 1993. Since they were married, the Sanchezes have paid their income taxes every year. They provide their family with medical insurance. They live in a duplex that they own jointly with another relative. A letter from Sanchez's parish priest at St. Elizabeth Parish in Oakland tells us that Sanchez "has attended our Church services since year 1988," and that Sanchez "is a good and hardworking person." Although Sanchez pled guilty to a DUI in 1991, two years before he was married, he has not been arrested since then. For the past sixteen years, the Sanchezes have been working hard to provide their three American-born children with a good life in the United States. They also take care of Sanchez's ailing, diabetic father, a lawful permanent resident, who lives with them.

In 2000, Sanchez wished to legalize his status in the United States, so he sought help from two immigration attorneys, John Ricci ("Ricci") and Frank Sprouls ("Sprouls"). These attorneys advised Sanchez to first file an application for asy-

SANCHEZ v. HOLDER

lum on the basis of economic discrimination.[1] Ricci appeared before the IJ in June of 2000 and withdrew the baseless asylum application prepared by his law firm. Ricci told the IJ that he wished to file an application for cancellation of removal. The IJ then continued the matter.

Sadly, like many other unsophisticated petitioners, Sanchez hired attorneys who have poor records before the state bar and our court. California State Bar records cited Ricci twice for "Discipline, probation; no actual susp[ension]" and once for "Public reproval with/duties." Sprouls, who represented Sanchez before the BIA and our court, has a record of misconduct before the Ninth Circuit. In 2005, Sprouls "was on probation for numerous ethical violations in immigration matters." *See Granados v. Keisler*, No. 04-76322, 2007 WL 3230298, at *2 (9th Cir. Oct. 31, 2007) (citing *In re Sprouls*, No. 05-80025 (9th Cir. Sept. 23, 2005)). In his February 2005 investigation of Sprouls, the Ninth Circuit Appellate Commissioner found that Sprouls violated his duties as an attorney by engaging in many instances of "deficient conduct."[2] Report and Recommendation of the Appellate Commissioner, adopted in *In re Sprouls*, No. 05-80025 (9th Cir. Sept. 23, 2005). In a number of cases the Appellate Commissioner determined that

---

[1]Sanchez's application for asylum, prepared by his immigration attorneys, stated the basis for his claim as: "I have lived in the United States for over ten years. I would be subject to discrimination, harassment and economic deprivation by the ruling powers. I come from a poor background, along with my family I would be denied economic opportunities."

[2]The Appellate Commissioner found that Sprouls's deficient conduct included "filing and knowingly maintaining a frivolous action," "negligently failing to file a response to [a] motion," "filing frivolous and misleading brief[s]," "negligent[ly] fail[ing] to respond to the court's orders," "negligently failing to file an opposition to the respondent's motion to dismiss," "fail[ing] to act diligently on behalf of his client," "fail[ing] to respond to court orders and fail[ing] to prosecute the petitions," "fil[ing] late briefs in seven petitions for review," and filing five "[i]dentical [d]efective [b]riefs" on behalf of different clients. Appellate Commissioner's Report and Recommendation, adopted in *In re Sprouls*, No. 05-80025 (9th Cir. Sept. 23, 2005).

Sprouls's deficient conduct "had the potential to injure his clients." *Id.* Furthermore, in 2007 our court found that Sprouls provided ineffective assistance of counsel to another client in *Granados v. Keisler*.[3] *See Granados*, 2007 WL 3230298, at *2.

In the case before us, the IJ found that Sanchez met all the requirements necessary to grant his petition for cancellation of removal except one: "Unfortunately [Sanchez] is barred from claiming good moral character," because "he has paid a coyote to bring his wife into the United States illegally."[4] The IJ therefore denied Sanchez's application for cancellation of removal, and the BIA affirmed.

On appeal to this court, we held that under the reasoning of *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir. 2005), Sanchez was entitled to cancellation of removal because Congress intended for the family unity waiver to apply in circumstances where an alien has helped "smuggle" his spouse into the country. Thus, the majority held that Sanchez possessed the requisite "good moral character," and granted his cancellation of removal application. I agree with the reasoning of *Moran* and the holding of the three-judge panel in this case.

Instead of following the logic of *Moran*, the majority strug-

---

[3]In *Granados* we held that "[t]he deficient performance of Sprouls in the proceedings to reopen Granados's case before the IJ and the BIA is plain on the face of the administrative record and rises to the level of a due process violation because Granados was prevented from reasonably presenting his case." *Granados*, 2007 WL 3230298, at *2. "Sprouls presented an incomplete and grammatically flawed motion to reopen, failed to comply with any of the *Losada* requirements for an IAC claim, failed to investigate or elicit material facts relevant to Granados's individual case, failed to provide a translated version of the motion to reopen to Granados, and on his own initiative included false statements of fact." *Id.*

[4]The IJ also noted that, "[t]he court need not reach into the issue of discretion. But if I do, then I will find that I will exercise my discretion in [Sanchez's] favor."

gles through a labyrinth of complex statutory interpretation to conclude that Congress intended that people like Sanchez be deemed to have "bad moral character." With simple common sense, though, one should easily conclude that the opposite is true. Indeed, if we tried to explain the majority's complex interpretation of Congress's statutes to members of Congress themselves, I submit that many would be amused.

How can we possibly say members of Congress intended that a man who married his hometown sweetheart, brought her here for a better life, worked hard for twenty-one years to provide for his three children, bought a home, attended church regularly, and cared for his ailing father is a man of bad moral character? Most would say, instead, that this is the story of a good man making every attempt for himself, his wife, and his three American citizen children to live the American dream. In our nation's history, millions of immigrants have done the same. How can we condemn this behavior as "bad moral character" after honoring this dream since the birth of our nation?

Instead, I find the reasoning of *Moran v. Ashcroft* to be much more compelling. *Moran* held that a petitioner for cancellation of removal who assisted another alien to enter this country illegally generally *does not* meet the good moral character requirement for cancellation of removal. *Moran*, 395 F.3d at 1093. But we further held that under the family unity waiver[5] "the statutory scheme governing the requirements for

---

[5]The text of the family unity waiver reads as follows:

The attorney general may, in his discretion for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest, waive application of clause (i) of subsection (a)(6)(E) of this section in the case of any alien lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a returning resident under section 1181(b) of this title and in the case of an alien seeking admission or

cancellation of removal *preserves eligibility* for individuals whose involvement in 'alien smuggling' is limited to helping their own family members, including spouses and children." *Id.* at 1090 (emphasis added).

The *Moran* court found that because the alien-smuggling provision and its exceptions[6] are written with regards to "inadmissibility" rather than "cancellation of removal," courts must translate the alien-smuggling inadmissibility provision and its exceptions into the language of cancellation of removal. *Id.* at 1093. The *Moran* court explained that such a translation "requires that we replace references to admissibility, applications for admission, and adjustment of status with references to cancellation of removal." *Id.* (citing *Gonzalez-Gonzalez v. Ashcroft*, 390 F.3d 649, 652 (9th Cir. 2004)). According to *Moran*, the family unity waiver rule in the context of cancellation of removal would therefore read:

> The alien . . . does not fail the good moral character requirement for cancellation of removal where the Attorney General exercises discretion to waive the applicability of [the alien-smuggling provision]. Such discretion may be exercised "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest," to waive the applicability of the alien-smuggling provision to the good moral character determination of an applicant for

---

> adjustment of status as an immediate relative or immigrant under section 1153(a) of this title (other than paragraph (4) thereof), if the alien has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law.

8 U.S.C. § 1182(d)(11).

[6]The alien-smuggling provision is found in 8 U.S.C. § 1182(a)(6)(E)(i), and the exceptions are found in 8 U.S.C. § 1182(a)(6)(E)(ii) and (iii), and § 1182(d)(11).

cancellation of removal who "has encouraged, induced, assisted, abetted, or aided only an individual who at the time of such action was the alien's spouse, parent, son, or daughter (and no other individual) to enter the United States in violation of law."

*Id.* at 1094 (quoting 8 U.S.C. § 1182(d)(11) (cross-referenced by 8 U.S.C. § 1182(a)(6)(E)(iii))). This makes perfect sense.

Indeed, by establishing a "family unity" waiver, Congress has shown that it *wants* to help immigrant men and women maintain their marriages and families. Congress has further demonstrated in the specific context of cancellation of removal that the family unity waiver applies. When stating the requirements of "cancellation of removal," Congress included the definition of "good moral character."[7] In the definition of "good moral character," Congress referred to the alien-smuggling provision *and its exceptions*, including the family unity waiver.[8] Why should we disregard the explicit intent of Congress, as the majority asks us to? The majority finds an exception barring the family unity waiver in the case of cancellation of removal, but Congress has never stated that such an exception exists.

In short, I agree with the *Moran* court's reasoning and the holding of the three-judge panel's opinion that the family unity waiver applies to Sanchez, and that we should grant his application for cancellation of removal. Accordingly, I dissent.

---

[7]When defining the requirements for cancellation of removal in 8 U.S.C. § 1229b, Congress expressly included the good moral character definition found in 8 U.S.C. § 1101(f)(3).

[8]*See supra* note 6.