**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

EVARISTO MARTINEZ-PIOQUINTO,

Petitioner,

v.

ERIC H. HOLDER, Jr., Attorney General,

Respondent.

No. 05-75013

Agency No. A079-525-930

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 16, 2011[**]
Pasadena, California

Before: PREGERSON, D.W. NELSON, and IKUTA, Circuit Judges.

Martinez-Pioquinto is statutorily ineligible for cancellation of removal

because he failed to demonstrate "good moral character" for the ten-year period

before the date of his application. *See* 8 U.S.C. §§ 1229b(b)(1)(B), 1101(f)(3).

Specifically, Martinez-Pioquinto admitted to knowingly assisting his fiancee to

---

[*]       This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**]      The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

"enter the United States in violation of law."  8 U.S.C. § 1182(a)(6)(E)(i).  The family reunification exception to removability does not aid Martinez-Pioquinto, because it is applicable only to waivers of admissibility, not to the establishment of "good moral character," *see Sanchez v. Holder*, 560 F.3d 1028, 1032 (9th Cir. 2009) (en banc); and even then applies only to aliens who assisted "the alien's spouse, parent, son, or daughter (and no other individual)" before May 5, 1988, 8 U.S.C. § 1227(a)(1)(E)(ii).  The smuggling incident here occurred after May 5, 1988, and involved petitioner's fiancee, not his wife.[1]

Like the dissent, we recognize that Martinez-Pioquinto is a sympathetic figure.  But like the immigration judge, we are bound by the law as it is, not the law as it might (or should) be.  The IJ did not err in denying Martinez-Pioquinto's application for cancellation of removal.

**PETITION DENIED.**

---

[1] While the dissent is correct that the smuggling incident occurred more than ten years before this appeal, it occurred less than three years before the immigration judge rendered his ruling, and the statute required the immigration judge to determine whether Martinez-Pioquinto had been a person of "good moral character" during the ten-year period immediately preceding his application for relief.  *See* 8 U.S.C. § 1229b(b)(1)(B).

FILED

MAR 17 2011

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

PREGERSON, Circuit Judge, dissenting:

The majority leans heavily on *Sanchez v. Holder*, 560 F.3d 1028 (9th Cir. 2009) (en banc). I continue to abide by my view that *Sanchez* should be overturned because it makes a mockery of our nation's core values. *See id.* at 1036 (Pregerson, J., dissenting).

Like *Sanchez*, this is a case about a good and industrious husband and father who established a loving home for himself, his wife, Guillermina Carrera Abad ("Guillermina"), and their five American-born citizen children. Martinez-Pioquinto works as an assembler in Anaheim, California, with the same company he has worked for since 1990. He has paid his taxes every year since arriving in the United States. The couple's children have done well in school. The family attends church together. Martinez-Pioquinto has never been detained by immigration officials and has not been convicted of any criminal misconduct.

Martinez-Pioquinto and Guillermina both applied for cancellation of removal based on the exceptional and extremely unusual hardship that their deportation would cause to their qualifying U.S.-citizen children. *See* 8 U.S.C. § 1229b(b). Their second son was born prematurely and suffers from developmental delays and neurological abnormalities. He attends the Rehabilitation Institute in

Anaheim, California, to improve his development. The couple's second daughter suffers from febrile seizures, high fevers, and vomiting. She has difficulty breathing, and has required several emergency room visits. Although she takes medications regularly, doctors have been unable to give her a specific diagnosis.

The Immigration Judge ("IJ") originally denied both Martinez-Pioquinto's and Guillermina's applications for cancellation of removal for reasons unrelated to an analysis of whether the U.S.-citizen children would suffer "exceptional and extremely unusual hardship" should their parents be deported. *See* 8 U.S.C. § 1229b(b)(1)(D). The IJ denied Guillermina's application for failure to establish the requisite ten years physical presence for cancellation of removal. *See* 8 U.S.C. § 1229b(b)(1)(A). The BIA, however, severed Guillermina's case from her husband's and remanded her case to the IJ because of a change in the law. On remand, the IJ granted Guillermina cancellation of removal.

But the IJ denied Martinez-Pioquinto's application because he concluded that Martinez-Pioquinto was ineligible for cancellation because he lacked the requisite "good moral character" to cancel removal. *See* 8 U.S.C. § 1229b(b)(1)(B). That finding was based on Martinez-Pioquinto's truthful answers to the Department of Homeland Security ("DHS") attorney's questions at his hearing before the IJ on his application for cancellation of removal regarding an

2

incident that occurred now more than ten years ago:

| | |
|---|---|
| DHS attorney: | The second time that [Guillermina] went back to Mexico [in January 2001], do you know why she went back? |
| Martinez-Pioquinto: | She went back to Mexico because she wanted to see her father, he was sick. |
| DHS attorney: | Okay. Did you accompany her on that occasion? |
| Martinez-Pioquinto: | No. |
| DHS attorney: | And how did she come back to the United States? |
| Martinez-Pioquinto: | That's the second time she returned. She returned illegally. |
| DHS attorney: | Did she use the assistance of a smuggler? |
| Martinez-Pioquinto: | Yes. |
| DHS attorney: | And you were here in the United States, did you in anyway assist in those arrangements? |
| Martinez-Pioquinto: | Yes. |
| DHS attorney: | And how did you help? |
| Martinez-Pioquinto: | I paid the money where he could pass her. |
| DHS attorney: | And how much money did you pay? |
| Martinez-Pioquinto: | About $1,000 |
| DHS attorney: | And after you paid that money, did he assist her in coming to the United States illegally, the smuggler? |
| Martinez-Pioquinto: | Yes. |
| DHS attorney: | Nothing further, Your Honor. |

Is such an honest man a man of bad moral character?

In *Sanchez*, this court held that an alien who arranged for his wife to be smuggled into the United States cannot demonstrate the "good moral character" necessary to cancel removal. *Sanchez*, 560 F.3d at 1034. As I wrote in my dissent in *Sanchez*, "the majority struggle[d] through a labyrinth of complex statutory interpretation to conclude that Congress intended that people like Sanchez be

3

deemed to have 'bad moral character.'" *Id*. at 1038 (Pregerson, J., dissenting). As in *Sanchez*, I find the result here to be absurd. This is not a story about a man with "bad moral character." It is instead "the story of a good man making every attempt for himself, his wife, and his [five] American children to live the American dream." *Id.*

The en banc panel in *Sanchez* overturned *Moran v. Ashcroft*, 395 F.3d 1089 (9th Cir. 2005) by applying a misguided view of congressional intent. I continue to find the reasoning of *Moran* to be much more compelling. *See Sanchez*, 560 F.3d at 1038 (Pregerson, J., dissenting). In *Moran*, we held that Congress intended the "family unity" waiver employed in the inadmissibility context to apply to cancellation of removal proceedings, where an "individual's involvement in 'alien smuggling' is limited to helping their own family members, including spouses and children." *Moran*, 395 F.3d at 1090. "[B]y establishing a 'family unity' waiver, Congress has shown that it *wants* to help immigrant men and women maintain their marriages and families." *Sanchez*, 560 F.3d at 1039 (Pregerson, J., dissenting) (emphasis in original).

Moreover, the result of this case is unconscionable. Martinez-Pioquinto's wife was granted cancellation of removal based on the IJ's conclusion that the couple's American-born citizen children would suffer exceptional and extremely

4

unusual hardship if their mother were deported, meaning that she successfully demonstrated that her children "would suffer hardship that is *substantially beyond that which would ordinarily be expected to result from [her] deportation.*" *In re Monreal-Aguinaga*, 23 I. & N. Dec. 56, 59 (BIA 2001) (emphasis added).

In this case, the government is substituting one extreme hardship that U.S.-citizen children will suffer with another by deporting the sole breadwinner of the family. Our government has *already* determined that *extreme and unusual hardship* will be inflicted on five American-born citizen children if their mother is deported. Martinez-Pioquinto's deportation will undoubtedly cause his children to suffer the extreme and unusual hardship the government sought to prevent when it canceled the removal of their mother. This absurd result hurts not only the children, but also burdens our government, which will likely have to provide assistance to the family in their father's absence.

This unconscionable result deprives American-born citizen children of their constitutionally protected right to remain in the country of their birth with their family intact. This outcome is unjust and violates due process. *See, e.g., Moore v. City of Cleveland*, 431 U.S. 494, 503-05 (1977) (plurality opinion) ("Our decisions establish that the Constitution protects the sanctity of the family precisely because the institution of the family is deeply rooted in this Nation's history and

5

tradition."); *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (recognizing that "[t]he integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment"). This suffering inflicted on five American-born citizen children, we are told, is required by *Sanchez*. But I continue to believe that the opinion in *Sanchez* "disregard[s] the explicit intent of Congress" to preserve family unity. 560 F.3d at 1039 (Pregerson, J., dissenting). Accordingly, I respectfully dissent.