**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3828
_____

MARIO JAIMEZ-PEREZ,
                                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                              Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A073-122-385)
Immigration Judge: Honorable Steven A. Morley

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 2, 2014
Before:  CHAGARES, GARTH and SCIRICA, Circuit Judges

(Opinion filed: April 7, 2014)
_____

OPINION
_____

PER CURIAM

     Mario Jaimez-Perez, a native and citizen of Mexico, petitions for review of the

Board of Immigration Appeals' ("BIA") final order of removal entered on August 21,

2013. For the following reasons, we will grant the petition for review, vacate the BIA's order, and remand to the BIA for further proceedings.

I.

Jaimez-Perez entered the United States through the California border around September 1987. In 1994, Jaimez-Perez paid smugglers to bring his wife and two children, all natives and citizens of Mexico, to the United States. In 1998, Jaimez-Perez and his wife had a third child, who was born in the United States. On March 30, 1998, Jaimez-Perez was served with a notice to appear, alleging that he was present in the United States without being admitted or paroled, in violation of Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i). The notice to appear was later amended to also allege that Jaimez-Perez sought to procure an immigration benefit by fraud or willfully misrepresenting a fact, in violation of INA § 212(a)(6)(C)(i), 8 U.S.C. § 1182(a)(6)(C)(i). Jaimez-Perez conceded removability and admitted to having made misrepresentations on asylum applications in 1994 and 1996. Jaimez-Perez filed an application for cancellation of removal under INA § 240A(b)(1), 8 U.S.C. § 1229b(b)(1).[1]

---

[1] In order to be eligible for cancellation of removal, an alien must show, inter alia, continuous presence in the United States for ten years preceding the date of his application for cancellation of removal and that he "has been a person of good moral character during such period." INA § 240A(b)(1)(A)-(B), 8 U.S.C. § 1229b(b)(1)(A)-(B); see also Duron-Ortiz v. Holder, 698 F.3d 523, 527-28 (7th Cir. 2012) (deferring to the BIA's reasonable conclusion that the period for determining good moral character is a ten-year period calculated backwards from the date on which a final administrative

At a hearing in January 2006, an Immigration Judge ("IJ") found that Jaimez-Perez established ten years of continuous presence in the United States. At a hearing in October 2011, an IJ found that Jaimez-Perez's false statements on his asylum applications occurred prior to the relevant ten-year period and did not bar a finding of good moral character. However, Jaimez-Perez testified on cross-examination that after his son Miguel was deported to Mexico in 2009, he sent Miguel money for food. Jaimez-Perez testified that he also sent money to a U.S.-citizen in Texas who helped Miguel reenter the United States unlawfully. Immediately after this testimony, the Department of Homeland Security ("DHS") moved to pretermit Jaimez-Perez's application on the basis that the financial assistance that he provided to his son precluded a demonstration of good moral character. Jaimez-Perez's counsel then conducted a redirect examination, following which, the IJ gave the parties the opportunity to submit briefs concerning the DHS's motion and adjourned the proceedings.

The IJ held a hearing in November 2011. At that hearing, Jaimez-Perez requested the opportunity to submit an affidavit or testimony clarifying four points: (1) that Miguel called Jaimez-Perez and asked him to send $1000 to him in Mexico and $1000 to Texas; (2) that the money Jaimez-Perez sent was Miguel's own money; (3) that Jaimez-Perez sent the money at Miguel's direction; and (4) that Jaimez-Perez was unaware at the time why Miguel wanted the money. The IJ refused Jaimez-Perez's request to enter additional

decision is issued).

3

evidence into the record, pretermitted Jaimez-Perez's application, and ordered him removed. The BIA dismissed Jaimez-Perez's appeal, and he timely filed a petition for review.

## II.

We have jurisdiction to review a final order of removal under INA § 242(a)(1), 8 U.S.C. § 1252(a)(1). Because the BIA issued its own opinion on the merits, we review its decision rather than that of the IJ. See Li v. Att'y Gen., 400 F.3d 157, 162 (3d Cir. 2005). However, to the extent that the BIA deferred to or adopted the IJ's reasoning, we also look to and consider the decision of the IJ on those points. See Chavarria v. Gonzalez, 446 F.3d 508, 515 (3d Cir. 2006). We exercise de novo review over the BIA's legal decisions. See Sandie v. Att'y Gen., 562 F.3d 246, 251 (3d Cir. 2009).

## III.

Jaimez-Perez argues that the IJ's refusal to accept additional evidence concerning the money that he sent to Miguel violated his due process rights. Notably, that evidence would have clarified what information Jaimez-Perez knew at the time he sent the money on Miguel's behalf. Specifically, it would have addressed whether Jaimez-Perez acted "knowingly," which is the requisite mens rea under INA § 212(a)(6)(E)(i), 8 U.S.C. § 1182(a)(6)(E)(i), when he assisted Miguel's illegal entry. See Tapucu v. Gonzales, 399 F.3d 736, 739 (6th Cir. 2005) (noting that the smuggling bar requires that an individual "knowingly assisted an illegal entry"). An alien who qualifies as an individual described

4

in § 212(a)(6)(E)(i) is necessarily not a person of good moral character. INA § 101(f)(3), 8 U.S.C. § 1101(f)(3). Jaimez-Perez is required to demonstrate good moral character to be eligible for cancellation of removal. INA § 240A(b)(1)(B), 8 U.S.C. § 1229b(b)(1)(B).

Due process entitles an alien to "a full and fair hearing and a reasonable opportunity to present evidence." Romanishyn v. Att'y Gen., 455 F.3d 175, 185 (3d Cir. 2006); see also INA § 240(b)(4)(B), 28 U.S.C. § 1229a(b)(4)(B). The importance of that right "can scarcely be contested." Cabrera-Perez v. Gonzales, 456 F.3d 109, 115 (3d Cir. 2006). Here, the DHS moved to pretermit Jaimez-Perez's application during an October 2011 hearing before the IJ. While Jaimez-Perez's counsel was allowed to immediately conduct a redirect examination, the record was ambiguous as to what Jaimez-Perez knew when he sent the money. At the end of that hearing, the IJ noted that he would not ask any questions of Jaimez-Perez because it was not his responsibility to "clarify the record for either party." At the November 2011 hearing, the IJ denied Jaimez-Perez's request to introduce the previously described evidence in order to clarify the record. Therefore, Jaimez-Perez was effectively denied a reasonable opportunity to present evidence in response to the DHS's motion to pretermit his cancellation application. See Jarbough v. Att'y Gen., 483 F.3d 184, 190 (3d Cir. 2007) ("At the core of due process are the requirements of notice and a meaningful opportunity to be heard.").

The absence of a reasonable opportunity to present evidence, alone, does not give rise to a successful due process violation claim. To prevail on a due process claim, an alien "must show that substantial prejudice resulted from the alleged procedural errors." Delgado-Sobalvarro v. Att'y Gen., 625 F.3d 782, 787 (3d Cir. 2010). The evidence that Jaimez-Perez sought to admit specifically challenged the motion to pretermit. Thus, Jaimez-Perez was prejudiced when he was denied the opportunity to create a full and clear record.[2] See, e.g., Cano-Merida v. INS, 311 F.3d 960, 965 (9th Cir. 2002) (finding prejudice when a petitioner was denied the opportunity to present oral testimony). Accordingly, the IJ's refusal to allow Jaimez-Perez to present additional evidence at the November 2011 hearing constituted a due process violation. It is on that basis that we remand to the BIA.

On remand, the BIA must allow Jaimez-Perez a renewed opportunity to present evidence of his knowledge when he forwarded the money to Miguel.[3] If after Jaimez-Perez has presented new evidence, the BIA nevertheless determines that he possessed the

---

[2] Although the IJ accepted a proffer of the evidence that Jaimez-Perez sought to introduce, the IJ reasoned that he did not find the proffer credible because it consisted of "post hoc rationalizations." "'While we defer to the IJ on credibility questions, that deference is expressly conditioned on support in the record.'" Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc) (quoting Nagi El Moraghy v. Ashcroft, 331 F.3d 195, 205 (1st Cir. 2003)). Consequently, an adverse credibility determination is only granted deference when based on specific reasoning that is supported by evidence in the record. Id. Thus, while the IJ noted in his opinion that the proffer of testimony "completes the picture and shows that it was done with knowledge," Jaimez-Perez's proffer explicitly stated that he was ignorant of what the money would be used for.

[3] We recognize that this will likely require that the BIA remand the case to the IJ. See 8

6

requisite mens rea when he forwarded the money to Miguel, the BIA should reconsider his assertion that INA § 212(d)(11), 8 U.S.C. § 1182(d)(11), permits him to establish good moral character.  See Sanchez v. Holder, 560 F.3d 1028, 1034-35 (9th Cir. 2009) (Paez, J., concurring).

IV.

For the foregoing reasons, we will grant the petition for review, vacate the BIA's final order of removal, and remand for further proceedings.

---

C.F.R. § 1003.1(d)(3)(iv).